UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
In re
**GENESYS RESEARCH INSTITUTE, INC.,**              Chapter 11
    Debtor                                          Case No. 15-12794-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

The matter before the Court is the "Motion to Remove Lynch, Brewer, Hoffman & Fink, LLP, Special Corporate and Litigation Counsel to Genesys Research Institute" (the "Motion") filed by Christine E. Briggs, Ph.D. ("Dr. Briggs"). The Motion has generated considerable controversy and precipitated the filing of numerous affidavits and exhibits, including multiple affidavits executed and filed by John P. Dennis, an attorney with the law firm of Lynch, Brewer, Hoffman & Fink, LLP ("LBH & F"), whose employment this Court authorized on August 31, 2015 pursuant to the "Amended Application of Debtor for Authority to Retain Lynch, Brewer, Hoffman & Fink, LLP as Special Corporate and Litigation Counsel."[1]

---

[1] In the Amended Application, the Debtor represented that LBH & F served as its corporate, business, and litigation counsel for several years prior to the filing of its Chapter 11 bankruptcy case. The Debtor stated that it expects LBH & F to assist and respond to its counsel in the administration of the bankruptcy case by providing its ounsel with legal and historical corporate and regulatory information based on LBH & F's unique knowledge of the Debtor's operations, financial affairs and regulatory and compliance matters. The Debtor also stated that LBH & F was employed in connection with various matters including litigation of claims by Dr. Lynn Hlatky, whom this

1

In response to the filing of the Motion, various parties filed papers in support of, or in opposition to, the Motion, including the following papers: (1) the Opposition filed by by LBH & F on behalf of Genesys Research Institute, Inc. ("GRI" or the "Debtor"); 2) the Affidavit of John P. Dennis, an attorney with LBH & F ("Attorney Dennis") in support of the Debtor's Opposition and on behalf of LBH & F, together with 12 exhibits; and 3) Additional Documents Pertaining to the Motion filed by Dr. Briggs.  These papers focused in part on a confrontation involving Dr. Lynn Hlatky's administrative assistant.

The Court heard the Motion on October 13, 2015 and directed Attorney Dennis to file a supplemental affidavit.  Two days later, on October 15, 2015, with the assent of the Debtor, the Court granted the Motion of the U.S. trustee to appoint a Chapter 11 Trustee.  Thereafter, various parties filed additional documents relating to the Motion, including 1) a Statement filed by the United States of America, on behalf of the Department of

---

Court notes has filed a claim in the sum of $2,311,000.00 for wrongful termination, retaliatory discharge and tortious interference, plus a contingent claim in an unknown amount related to potential patent proceeds.  Acccordingly, the Debor sought authority to employ LBH & F for the following purposes:

> a. to assist with various aspects of the Debtor's business operations including compliance with federal and state laws and regulation related to the operation of a biomedical research facility;
> b. to represent the Debtor in connection with any pending federal or state civil action in which the Debtor is named as a defendant or respondent, including but not limited to Hlatky v. GRI, et al.  . . .;
> c. to represent the Debtor in connection with the pending claims in the Massachusetts Commission Against Discrimination, MCAD; and
> d. to perform any and all other general, corporate or litigation services that may be required from time to time in the ordinary course of the Debtor's business during the administration of the Estate.

2

Energy (the "DOE"), together with an exhibit, in which the DOE noted that the "Debtor was the recipient of a DOE grant agreement ("Grant") captioned "Multi-Scale Systems Biology of Low-Dose Carcinogenesis Risk" and that "[f]rom 2009 to 2014, DOE paid nearly $6 million to the Debtor and its predecessors for costs claimed in furtherance of the project undertaken pursuant to the Grant" and referenced applicable regulations and policies; 2) the Supplemental Affidavit of Attorney Dennis to which he attached additional affidavits and exhibits; 3) Dr. Briggs's Response to the Supplemental Affidavit; and 4) the Statement of Interested Party Philip J. Hahnfeldt ("Dr. Hahnfeldt"), in support of the Motion. These papers focused in large part on whether the Debtor's use of grant funds complied with applicable laws and regulations.

On October 20, 2015, the Court again heard the Motion and directed the Massachusetts Attorney General and the Chapter 11 Trustee to file responses to the Motion by October 28, 2015, and November 13, 2015, respectively. The Court directed the Attorney General to state her position as to whether prepetition fees paid to LBH & F were paid in accordance with federal and state laws and regulations. In addition, the Court directed the Chapter 11 Trustee to state his position with respect to (1) any adverse interest of LBH & F, and whether the estate has any actual or potential claims against LBH & F; and (2) the necessity of continued employment of LBH & F in light of the appointment of the trustee.

Following the hearing, the parties filed additional documents. The DOE filed a Supplemental Statement on Federal Funding Issues in which it stated that "if the Debtor had no source of revenue other than federal grants, then the only way it could have spent

3

any money on organizaton costs is by using federal funds, which it cannot do." The Attorney General of the Commonwealth of Massachusets, Maura Healey, filed a Response, together with an exhibit. AttorneyDennis filed an Affidavit with respect to the DOE's Supplemental Statement. In addition, the Chapter 11 Trustee filed a Statement, and Dr. Hahnfeldt filed a Supplemental Statement in which he challenged the veracity of Attorney Dennis's statements in his affidavits.

The Attorney General cogently set forth the disagreements among the interested parties. She observed:

> 14. Dr. Briggs and Dr. Philip Hahnfeldt take the position that Lynch Brewer performed services for GRI related to "reorganization"; that costs for reorganization are not "allowable" costs under the federal regulations; and that because reorganization costs are not allowable, no funds received from federal granting agencies – whether funds reimbursing "direct" costs or funds drawn down as "overhead" to cover indirect costs – may be used to pay Lynch Brewer for said services.[2] Appendix B to 2 C.F.R. Part 230 provides that certain costs are unallowable without prior approval, including "Organization costs":
>
>> Expenditures, such as incorporation fees, brokers' fees, fees to promoters, organizers or management consultants, attorneys, accountants, or investment counselors, whether or not employees of the organization, in connection with establishment or reorganization of an organization, are unallowable except with prior approval of the awarding agency.
>
> *See* 2 C.F.R. Part 230, App. B (31). "Reorganization" is not further defined in 2 C.F.R. Part 230 or Appendix B.
>
> 15. GRI's position, in response, appears to be that as long as certain "front-end" restrictions are observed in charging direct or indirect costs to federal grants – that is, as long as no "unallowable" costs are included in the basis

---

[2] The Attorney General cited Dr. Briggs's Motion and Dr. Hahnfeldt's Statement [Docket 178].

for a claim for direct or indirect costs — then there is no restriction on how an organization (here, GRI) uses the funds actually drawn down, and such funds are general revenues that can be used by the organization for any purpose. . . .[3]

16. . . . The DOE Supplemental Statement does not address the question of whether federal regulations impose restrictions on the expenditure of funds drawn down to reimburse either "direct" reimbursement funds, indirect "overhead" funds, or both, if GRI had sources of revenue other than federal grant funds.

17. The positions taken by DOE and GRI are not necessarily inconsistent. Both suggest that the key question is whether GRI's claims for federal grant funds – either claims for direct cost reimbursement or information used to establish GRI's overhead or indirect cost rate – included the cost of legal bills for services that were "unallowable" (e.g., bills for reorganization

---

[3] The Attorney General cited 1) the Opposition to Dr. Briggss' Motion to Remove Lynch, Brewer, Hoffman & Fink as Special Corporate and Litigation Counsel to GRI [Docket 119]; 2) the Affidavit of John P. Dennis [Docket 117]; 3) the Supplemental Affidavit of John P. Dennis [Docket 171]. The Attorney General also noted that the Debtor supported this position with affidavits from two individuals, namely Mark A. Borreliz, an attorney at Verrill Dana, LLP (the "Borreliz Affidavit"), and Lisa A. Franciosa, a certified public accountant (the "Supplemental Franciosa Affidavit"), as well as the Supplemental Affidavit of John P. Dennis to which those affidavits are attached. *See* Exhibits 1 (Borreliz) [Docket 171-1] and 2 (Franciosa) [Docket 171-2]. The Borreliz Affidavit contains the opinion that: (i) as long as unallowable costs (such as, for example, legal fees for reorganization) are not claimed in the budget proposal for which project funding is sought (i.e., direct costs); and (ii) as long as unallowable costs are not included in the indirect cost proposal that an organization submits to the federal government in order to determine its indirect cost rate; and (iii) the organization actually incurs and pays the direct costs in its budget; then the organization is not limited in how it can expend the funds drawn down. *See* Borreliz Affidavit, para. 6. The Supplemental Franciosa Affidavit contains the opinion that where direct costs have been incurred by an organization for a grant, and those costs are charged to the grant and funds drawn down, the reimbursed funds may be used at the discretion of the grant recipient organization because the draw down is a reimbursement for costs already paid by the organization. *See* Supplemental Franciosa Affidavit, paras. 10, 19, 20.

5

services). There is disagreement between GRI and its experts, on the one hand, and Dr. Hahnfeldt (and perhaps Dr. Briggs), on the other hand, about whether the "allowable cost" restrictions also apply to a grantee's expenditure of funds that have been drawn down from the grantor agency. While the DOE Supplemental Statement seems to be supportive of Dr. Hahnfeldt's position on this issue, it does so only by assuming that GRI had no source of revenue other than federal grant funds. The DOE has not said, directly, that the federal allowable cost restrictions apply in all situations to expenditures as well as draw-downs, though the Attorney General believes that it likely possesses the expertise to do so, and that clarification of the federal regulations and agency interpretations on this point may assist in resolution of the federal regulatory question at issue.

18. To conclusively address the core federal regulatory issue in the Briggs motion would require information not currently before the Court (or the Attorney General), as indicated by the DOE's attorney at oral argument on October 20, 2015. More specifically, it would depend on: (i) the definition of "reorganization" under the federal regulations and agency interpretations; (ii) whether the Lynch Brewer fees were for reorganization under that definition; (iii) whether such Lynch Brewer bills were used to support claims for federal grant funds – either for direct costs, or to support the indirect overhead rate; and (iv) whether the federal allowable cost restrictions apply to expenditures if GRI had sources of revenue other than federal grant funding. If the federal agencies advise that the "allowable cost" rules apply to the expenditure of drawn-down "overhead" funds, then additional evidence would be necessary to assess whether such funds were used to pay any Lynch Brewer legal fees relating to "reorganization."

The Attorney General concluded that "[d]etermining whether GRI's claims for federal grant funds included unallowable legal fees would require analysis of both the GRI claims and supporting material, and of the legal bills themselves, which are potentially protected by privilege."

The Court, at this time, need not undertake the analysis outlined by the Attorney General, an analysis that would undoubtedly require discovery and an evidentiary hearing, would most likely arise either in the context of an adversary proceeding against LBH & F or an objection to a proof of claim filed by the DOE or another entity that

awarded research grants subject to federal regulations to the Debtor. The Chapter 11 Trustee has obviated the need to resolve the serious concerns raised by Dr. Briggs and Dr. Hahnfeldt. In his Statement, the Chapter 11 Trustee, citing In re Hub Business Forms, Inc., 146 B.R. 315, 319 (Bankr. D. Mass. 1992), observed that "[w]hile the services delineated in paragraph 3 above might arguably implicate the adverse interest issue, the Debtor's cessation of operations prior to the filing of its petition may obviate that concern," adding that the estate has not waived claims against LBH & F. Indeed, the Chapter 11 Trustee indicated that conversion of the Debtor's case to Chapter 7 "is warranted and in the best interests of creditors."

The Trustee also observed that he is considering the contintued retention of LBH & F foronly two matters. The first is a pending MCAD matter, which, according to the Chapter 11 Trustee, is not subject to the automatic stay. The MCAD action was brought by Ms. Cassedra Enayo, a former employee of the Debtor. The Trustee stated that the matter has been fully presented to the MCAD and that MCAD has taken under advisement the issue of whether Ms. Enayo has established a prima facie case against the Debtor. The Trustee further represented that LBH & F's services would only be required if the MCAD were to find probable cause or Ms. Enayo were to decide to pursue her claim in the Superior Court. The Chapter 11 Trustee added, however, that LBH & F's representation of the Debtor involves no cost the Debtor or the estate because LBH & F is being compensated directly by the Debtor's insurer at the reduced rate of $185 per hour.

The only other matter in which the Trustee stated that he may need the services of LBH & F is "to provide information and assistance in obtaining reimbursement from the

Debtor's D&O insurer for legal fees incurred by the Debtor and paid to Lynch Brewer which are covered by the Debtor's D&O policy."

In view of the Trustee's position that conversion of the case to Chapter 7 is warranted and that there is limited need for LBH & F's services, the Court concludes that allowance of the Motion is warranted at this time. The Court, therefore, shall enter an order granting the Motion, without prejudice to the Chapter 11 Trustee seeking authority to employ LBH & F for the limited purposes outlined in his Statement and to the filing by LBH & F of an application for compensation for services incurred prior to the date of this order. The Court will consider allowance of further employment of LBH & F by the Chapter 11 Trustee or approval of an application for compensation by LBH & F only after notice and a hearing.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 24, 2015