**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re:
**GENESYS RESEARCH INSTITUTE, INC**.,        Chapter 11
        Debtor                                Case No. 15-12794-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## I.    INTRODUCTION[1]

The matters before the Court for determination are: 1) the "Emergency
Motion by Party Philip Hahnfeldt ("Movant"), In Light of Additional Facts and
Testimony, for Court Reconsideration of 1) Order Approving Settlement
Agreement (Doc. 351) and 2) Order Authorizing Disposition of Biological Samples
and Sale of Equipment (Doc. 347)" filed by Dr. Philip Hahnfeldt ("Hahnfeldt")
("Hahnfeldt's Reconsideration Motion"); 2) the Application to Employ Licensed
Site Professional filed by the Chapter 11 Trustee, Harold B. Murphy (the
"Trustee"), of Genesys Research Institute, Inc. ("Genesys," "GRI," or the "Debtor")
(the "Application to Employ Licensed Site Professional"), pursuant to which he
seeks expedited authority to employ The Vertex Companies ("Vertex") to dispose

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re
Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The
bankruptcy court appropriately took judicial notice of its own docket.").

of certain biological materials (the "Biological Materials")[2] for purposes of implementing this Court's "Order Granting Motion by Trustee for Order Authorizing Disposition of Biological Materials and Sale of Equipment by Public Auction Sale Free and Clear of Liens, Claims, Encumbrances and Interests" (Doc. 364), dated May 21, 2016, (the "Sale/Disposition Order"); 3) the "Objection to Application to Employ Licensed Site Professional and Cross Motion for Reconsideration or Stay" filed by Dr. Lynn Hlatky ("Hlatky") ("Hlatky's Objection and Cross Motion");[3] and 4) the "Objection by Interested Party Clare Lamont to Motion of Chapter 11 Trustee to Employ Licensed Site Professional" filed by Clare Lamont ("Lamont") (the "Lamont Objection"). Through these motions and objections, Hahnfeldt, Hlatky, and Lamont[4] request that the Court reconsider and vacate two orders of the Court: an "Order Approving Settlement Agreement Between and Among (I) Harold B. Murphy, as Chapter 11 Trustee for Debtor

---

[2] In his Motion, the Trustee defined the Biological Materials as "hazardous and non-hazardous chemicals and certain biological materials including, without limitation, biological specimens, human blood and tissue samples, animal materials and carcasses, and related materials."

[3] In her Objection and Cross Motion, Hlatky did not reference Fed. R. Bankr. P. 8007 in her request for a stay. The Court, however, shall treat the request as a motion for a stay pending appeal under that rule.

[4] Hahnfeldt timely filed a proof of claim in the sum of $83,406.50 for unused sick time, severance, interest, plus a contingent claim in an unknown amount related to potential patent proceeds; Hlatky timely filed a proof of claim in the sum of $2,311,000 for wrongful termination, retaliatory discharge and tortious interference, plus a contingent claim in an unknown amount related to potential patent proceeds; Lamont timely filed a proof of claim for unused sick time, severance and interest in the sum of $17,076.

Genesys Research Institute Inc., (II) Steward Health Care System LLC and (III) Steward St. Elizabeth's Medical Center of Boston, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019," dated May 19, 2016 (the "Order Approving Settlement Agreement"), and the Sale/Disposition Order.

The Order Approving Settlement Agreement resolved all outstanding claims among Genesys and both Steward Health Care System LLC ("Steward" or "SHC") and its affiliate, Steward St. Elizabeth's Medical Center of Boston, Inc. ("SSEMC") (collectively the "Steward Entities" or "Steward") and required the Debtor to vacate St. Elizabeth's Hospital's premises in exchange for $750,000 (the "Settlement Agreement").[5]    The Court, through the Sale/Disposition Order,

---

[5] Steward Health Care System, LLC timely filed a 99-page proof of claim for $8,064,642.88 on a contingent basis plus other unliquidated amounts; SSEMC timely filed a 99-page proof of claim for $90,856.26, plus other unliquidated amounts, as well as $8,064,632.88 on a contingent basis, plus other unliquidated amounts. GRI was previously named Steward Research and Specialty Projects Corporation ("SRSPC"). Its name was changed from Steward Research and Specialty Projects Corporation to Genesys Research Institute, Inc. on December 31, 2012. According to the Steward Entities, in their proofs of claim, "[o]n November 6, 2010, Steward acquired the St. Elizabeth's Hospital Campus and a majority of the hospital's assets (the "Acquisition"), and "[i]n connection with the Acquisition, SHC [Steward Health Care System LLC] determined that certain grants previously held by non-profit seller entities should be held by SRSPC." They added: "[t]o that end, SRSPC was formed on November 3, 2010, and until December 31, 2012, SHC was the sole member of SRSPC." Steward and SRSPC entered into a Management Services Agreement dated March 1, 2012 and St. Elizabeth's Medical Center of Boston, Inc. entered into a Research Activities Agreement, pursuant to which, among other things, SSEMC assigned certain Clinical Trial Agreements ("CTAs") to SRSPC. The arrangement did not last long as SHC withdrew as the sole member of SRSPC, causing the legal disaffiliation between SRSPC/Genesys and Steward. According to Steward Entities in their proofs of claim,

Steward commenced the Steward Action . . . [an action commenced by Steward against GRI in the Massachusetts Superior Court for Suffolk County, captioned as Steward Health Care System LLC and Steward St. Elizabeth's Medical Center of Boston, Inc., vs. Genesys Research Institute, Inc., Civil Action No. 14-2382–BLS] on or around July 25, 2014 (the "Steward Action") for (i) breach of contract; (ii) unjust enrichment/equitable trust; (iii) conversion; (iv) money had and received; (v) indemnity; and (vi) contribution. . . . The Steward Action asserted damages of at least $6,573,478 on account of the breach of contract claim and at least $7,640,637 on account of the unjust enrichment/equitable trust claim.

In April 2015, the parties reached a settlement of the Steward Action and executed the Settlement Agreement dated April 16, 2015. Among other terms, the Settlement Agreement provided that the Debtor waives any and all claims to or rights in certain funds that were in dispute and which it claimed a right to, but were in fact funds of SHC or SSEMC in the amount of $1,234,288.19. Because those funds were funds of SHC or SSEMC and not a transfer of any funds from Debtor to SSEMC, Debtor's identification of those funds as a transfer in its Statement of Financial Affairs is incorrect. The Settlement Agreement further provided for the exchange of mutual releases, including of [sic] the claims and damages asserted in the Steward Action, and the dismissal of the Steward Action.

The Settlement Agreement also provided for the parties to enter into the Lease. The Lease had an initial term that began on February 1, 2015 and that ended on the contractually-defined Expiration Date of January 31, 2016, which would be automatically extended for successive one year terms unless the Debtor was in default or either party gave applicable notice to terminate. Lease §§ 3.1, 3.2. The Lease also provided that the Debtor could terminate the Lease effective August 31, 2015 by providing its written notice of intent to terminate on or before June 30, 2015. . . . Moreover, rent payments would only commence on September 1, 2015. . . . Thus, pursuant to the Settlement Agreement and the Lease, the Debtor occupied the Leased Premises from February 1, 2015 to August 31, 2015 without paying any rent.

granted the Trustee permission to sell research and other equipment (the "Research Equipment") on Steward's premises at public auction and to dispose of the Biological Materials.

## II     PROCEDURAL BACKGROUND

On July 14, 2015, the Debtor filed a voluntary Chapter 11 petition. The Debtor is a Massachusetts nonprofit corporation which conducted biological research and was partially funded by federal, state, and private grants. One aspect of the research it conducted involved the gathering and collection of tissue samples and their preservation for examination and analysis at a future date. The Debtor's operations were conducted at the campus of St. Elizabeth's Hospital, owned and operated by SSEMC (the "Leased Premises"). In an Opposition and Response to the Debtor's Expedited Notice of Intent to Abandon Certain Assets, discussed below, Hlatky stated that she is the founding director of the Center of Cancer System Biology (the "Center"). According to Hlatky, she founded the Center in 2006, which was established at St. Elizabeth's Hospital. She added: "In 2011, Steward Health Care Systems, LLC and/or its affiliates . . . a for-profit corporation, acquired St. Elizabeth's Hospital. Because federal law bars for-profit entities from administering federal grants, Steward Health created a new, non-profit corporation to which Dr. Hlatky's lab was assigned. That entity is the Debtor."

In September of 2014, prior to filing its bankruptcy petition, Genesys had terminated all but one employee. The remaining employee was terminated on the

petition date of July 14, 2015.  On July 28, 2015, the Court granted the Debtor an extension until August 14, 2015 for filing schedules, the statement of financial affairs, and other required documents.

On July 23, 2015, Attorney General Maura Healey of the Commonwealth of Massachusetts ("the Attorney General"), filed a Notice of Appearance and Request for Service of All Papers.  The Attorney General has statutory authority to monitor non-profit corporations and charities.

On July 31, 2015, the Debtor filed an "Expedited Notice of Intent to Abandon Certain Assets," including the Biological Materials listed in the Debtor's schedules, which are the subject of the Sale/Disposition Order central to Hlatky's Objection and Cross Motion.   The Debtor claimed that maintenance of the Biological Materials was burdensome to the estate, as there was no on-going research operation which required the preservation of the tissue samples and specimens, and there were no funds available with which to employ a person to care for the Biological Materials.  The Debtor requested a hearing no later than August 14, 2015 with respect to its Notice of Intent to Abandon.  The Court scheduled a hearing for August 12, 2015.  Several responses and oppositions were filed, including responses from the Attorney General, Steward, Hahnfeldt, Hlatky, and sixteen researchers or former employees.

Specifically, on August 6, 2015, the Attorney General filed a Response and Limited Opposition to the Debtor's Expedited Notice of Intent to Abandon Certain Assets. The Attorney General requested this Court to disapprove the Debtor's

Intent to Abandon until a hearing could be held at which all potentially interested researchers and agencies could be identified and all available options for transfer of the Biological Materials could be explored.

On August 11, 2015, the Steward Entities also filed a Response and Limited Opposition to the Debtor's Notice of Intent to Abandon. Steward represented that it did not own the Biological Materials, but stated that unless the Debtor could offer proof that the samples and specimens would be safely and lawfully handled and transferred to another custodian at another location, authority to abandon the Biological Materials should be denied.

On August 11, 2015, Hahnfeldt, an Associate Professor of Medicine at Tufts University School of Medicine and a former research scientist at Genesys, filed an objection to the Debtor's Notice of Intent to Abandon in which he claimed that the material Genesys sought to abandon constituted "a restricted asset" because they were "either derived from US Government grant funds restricted to a specific cancer research purpose proposed by Dr. Hlatky, or were the ongoing developing product of the pursuit of that purpose. . . ." He added that "the motion to dispose is a *de facto* request to deviate from donor intentions with respect to the disposition of assets, an action that triggers a need to request *cy pres* relief."

In addition to those objections, on August 11, 2015, sixteen individual researchers or former employees of Genesys, including Lamont, filed requests for a continuance, arguing there was lack of adequate notice and, consequentially, an inability on their part to appropriately respond. The researchers asserted that the

7

assets that the Debtor proposed to abandon were in fact part of on-going, public research in accordance with terms set forth under the federal research grant agreements.

In her Opposition and Response to the Debtor's Notice of Intent to Abandon, Hlatky[6] argued that 1) the Debtor did not give the Court full and adequate disclosure regarding the abandonment; 2) the Court should allow additional time to consider the issues and schedule a further hearing so that

---

[6] Hlatky also disclosed the following, by way of background, in her Opposition:

Before certain Members of the Debtor took over the operations of the Debtor in April 2013, the Debtor was a thriving multi-million dollar research facility and was internationally known for its cutting edge cancer research. Dr. Hlatky headed the Center, and secured more than thirty-two million dollars in federal funding from the National Institutes of Health, the National Cancer Institute, NASA, the Department of Energy and others to support her groundbreaking work. She had national and international collaborations, and had accomplished what no other cancer researcher ever had – the transformation of normal human cells into human cancer cells (e.g. prostate and lung) without the use of any genetic manipulation or exposure to carcinogens to induce the carcinogenic transformation. Even more strikingly, the cancer cells created in Dr. Hlatky's lab exhibit all the properties of cancer stem cells, which are those special cancer cells that are responsible for tumor origination, tumor survival under therapy, and tumor regrowth post-therapy. The creation of human cancer stem cells is widely regarded as the Holy Grail of cancer research because such cells provide a model to understand how cancer originates, how it responds to treatment, and how it recurs and metastasizes post-treatment. The Biological Assets that the Debtor now proposes to abandon were generated during Dr. Hlatky's research, are critical to the continuation of that research and essential to the mission of the Debtor. Destruction of the Biological Assets will set back unique and promising cancer research for years, if not decades.

interested parties could understand the value of the assets at stake; and 3) the assets should not be abandoned as they are critical to cancer research and represent products of restricted federal funds.  Hlatky also stated that she would consider accepting the Biological Materials and related research materials through a newly formed non-profit entity.[7]

On August 12, 2015, the Court, ruling from the bench, disapproved the Debtor's Notice of Intent to Abandon and sustained the objections of the Commonwealth and Hlatky.  In its ruling, the Court stated that it was the Debtor's burden to prove that the property of the estate that it intended to abandon was burdensome and of inconsequential value and that the Debtor had not sustained that burden. The Court also stated that, the Debtor, as a non-profit corporation, had an obligation to comply with applicable, non-bankruptcy law in connection with the disposition of its assets.  Because the Debtor had not attempted to find a buyer for its assets, the Court ruled that the Debtor had not complied with Massachusetts law. The Court ordered that there should be a specific solicitation to public charities and research laboratories for the Debtor to fulfill its obligations under non-bankruptcy law.

---

[7] Hlatky requested the Court to order "that the Biological Assets and all related Research Materials be conveyed to Dr. Hlatky's nonprofit entity and that Dr. Hlatky be given access to the Research Lab for the purposes of accessing and analyzing the Biological Assets, that Dr. Hlatky be given authority to attempt to preserve the Biological Assets while they remain in the Research Lab and that Dr. Hlatky be given authority to retrieve and relocate all of the Biological Assets and Research Materials."

On August 14, 2015, the Debtor filed its schedules of assets and liabilities and a statement of financial affairs. On Schedule A-Real Property, the Debtor listed no interests in real property. Likewise, on Schedule D-Creditors Holding Secured Claims, the Debtor did not list any creditors holding secured claims. On Schedule E-Creditors Holding Unsecured Priority Claims, however, the Debtor listed numerous creditors holding priority claims for unpaid salary and wages. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor disclosed general unsecured creditors with claims totaling $842,755.59. On September 28, 2015, the Debtor filed an amended Schedule F identifying general unsecured creditors with claims totaling $843,219.64. On Schedule G–Executory Contracts, the Debtor disclosed an agreement between it and Steward, dated April 16, 2015 (the "Steward Settlement Agreement").

Pursuant to the Steward Settlement Agreement, the Debtor occupied the Leased Premises at St. Elizabeth's Hospital in Brighton, Massachusetts. As more fully described in footnote 5, *supra,* the Steward Settlement Agreement provided that the Debtor would begin paying rent on September 1, 2015. Thus, pursuant to the Prepetition Settlement Agreement, the Debtor occupied the Leased Premises from February 1, 2015 to August 31, 2015 without paying any rent. In the event that the Steward Settlement Agreement was terminated or otherwise avoided or rejected, the Steward Entities would be entitled to monthly rent payments, which were resolved by the Settlement Agreement, for the period from July 1, 2014 through August 31, 2015.

On Schedule B-Personal Property, in response to the information required on line 22, requiring a description of "Patents, copyrights, and other intellectual property," the Debtor listed numerous patents, stating that the value was "unknown." In response to question 28 regarding "Office equipment, furnishings, and supplies," the Debtor listed 30 computers with a value of $3,000 and a "contingent interest in all computer equipment and office supplies." In response to question to 31, which requires disclosure of "Animals," the Debtor listed 32 mice with a value of $0. In response to question 35, which requires disclosure of "Other personal property of any kind not already listed," the Debtor listed "Biological Specimens and/or Tissue Samples" with an "unknown" value.

On the Statement of Financial Affairs, in response to question 14, which requires disclosure of "Property held for another person," the Debtor attached a 30-page list of assets which it stated was property owned by Steward, including various types of devices and equipment which the Debtor used in the operation of its laboratory. It did not provide values for the itemized property. It did list, however, approximately $80,000 in property held for three other entities.

The Statement of Financial Affairs reflected that the Debtor received $216,911.00 in income in 2015, $5,000,655.23 in 2014 and $7,860,353.00 in 2013. In response to questions 3, "Payments to creditors," and 10, "Other transfers," on the Statement of Financial Affairs, the Debtor disclosed that it had paid Steward $1,234,288.19 on April 16, 2015 and $62,577.28 on March 14, 2014 and that no remaining amounts were due to Steward. The Debtor also disclosed in response

11

to question 4, "Suits and administrative proceedings, executions, garnishments and attachments," that it was a defendant in an action brought by the Steward Entities in Suffolk Superior Court, as well as a defendant in an action brought by Hlatky in Suffolk Superior Court.

On September 14, 2015, the Steward Entities filed a "Motion of Interested Party Steward Health Care System LLC and Steward St. Elizabeth's Medical Center of Boston, Inc. for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) or, in the Alternative, for the Appointment of an Examiner" (the "Motion for Relief from Stay"), seeking (1) to evict the Debtor and its property from Steward's Leased Premises at St. Elizabeth's Hospital and to transfer the biological specimens and tissue samples to a licensed bio-specimen repository, or, alternatively (2) to appoint an examiner pursuant to 11 U.S.C. § 1104(c) to take possession of the samples and make a recommendation regarding the appropriate disposition of the samples. Steward asserted "cause" under § 362(d)(1), namely that the Debtor continued to use Steward's facilities beyond the term of its lease with Steward, and that the Debtor was storing potentially hazardous materials without the supervision of a financially or operationally responsible party.

On September 28, 2015, the Debtor filed an Opposition to Motion for Relief from Stay and a request for sanctions against Steward for violation of the automatic stay, together with a request for contempt and sanctions for violation of this Court's order entered at a status conference held on August 26, 2015. Pursuant to its order, the Court prohibited Steward from taking action against the Debtor or

the Biological Materials without further order of this Court.  The Debtor argued that any actions Steward or other third parties might take would disrupt, if not make impossible, the sale of some or all of the property of the Debtor's bankruptcy estate, negating or reducing its ability to realize sale proceeds. The Debtor also asserted that any such actions would likely lead to claims for damages from interested parties, such as granting agencies and charitable institutes, which provided funding to the Debtor.  Furthermore, the Debtor asserted that Steward lacked cause for relief from the automatic stay under 11 U.S.C. § 362(d)(1).  The Debtor requested the Court enter an Order requiring Steward to cease and desist its actions that were interfering with its access to the Leased Premises and enter an Order awarding costs, including attorneys' fees, and sanctions, against Steward for its actions in willfully violating the automatic stay imposed by 11 U.S.C. §362(a).

On September 28, 2015, Hlatky also filed an Opposition to the Motion for Relief from Stay.[8]  On the same day, the United States Department of Energy

---

[8] In her Opposition, she stated, among other things, the following:

> The main issue at hand is really preservation of the Biological Samples. This entails not only protecting the vast bank of invaluable Biological Samples in varied forms (tissue, organ, cell, protein, RNA, DNA, mjcroRNA, siRNA, exosomes, antibodies, etc. in liquid nitrogen freezers and -80 freezers), including an unprecedented type of human "cancer stem cell" created in Dr. Hlatky's laboratory, but also preserving the associated handling history and intellectual aspects of the samples. This is essential to interpreting the 'discovery' nature of the work and protecting the public interest therein. Together, these are the fruits of more than $30 million in

("DOE"), which had funded certain research grants awarded to the Debtor, filed

an Agreed Motion to Extend Time to Respond to Steward's Motion for Relief from

Stay ("Motion to Extend Time").[9]  Steward assented due to ongoing discussions

with the DOE to preserve the Biological Materials. The Court allowed the DOE's

Motion to Extend Time and scheduled a hearing on Steward's Motion for Relief

from Stay for October 13, 2015.

The DOE objected to Steward's Motion for Relief from Stay on September

30, 2015. The DOE argued that because the Debtor's Biological Materials were

---

> restricted grant funding provided substantially under the charge of
> three main federal agencies, NIH, DOE and NASA. Any action, such
> as relocating the Biological Samples, that poses risk to the research
> remaining to be performed on the samples, stands to affect their
> associated knowledge base – the true value of the samples – in
> profound ways.

(footnote omitted).

[9] The DOE in its Objection to the Trustee's Motion for Order Authorizing
Disposition of Biological Materials and Sale of Equipment by Public Auction Free
and Clear of Liens, Claims, Encumbrances and Interests, discussed below, stated:

> In 2009, DOE awarded Grant agreement (DOE Grant) DE-SC0002606
> to Caritas St. Elizabeth's Medical Center ("Caritas"). The Grant was
> captioned as "Multi-Scale Systems Biology of Low-Dose
> Carcinogenesis Risk," ("Project"), and funded the entire Project
> without any contribution from Caritas. In 2012, the DOE novated the
> Grant to a new recipient, Steward Research and Specialty Projects
> Corporation, which became Genesys Research Institute, Inc.
> (Genesys) on December 18, 2012. . . .

> From 2009 to 2014, DOE provided nearly $6 million in funding to
> Genesys and its predecessors in furtherance of the Project, including
> the Materials acquired for, or used in, the Project. . . . Dr. Hlatky was
> the lead researcher on the Project.

developed using funds from a DOE grant, the DOE had a property interest in the Biological Materials.  Additionally, the DOE claimed an interest in continuing "the significant research" funded by its grant and objected to the motion to the extent that it would permit the samples to be transferred for destruction.

At the October 12, 2015 hearing on Steward's Motion for Relief from Stay, the parties orally moved to continue the hearing.  The Court granted the oral motion and continued the hearing to October 20, 2015.

Prior to the continued hearing on the Motion for Relief from Stay, the U.S. trustee, on October 15, 2015, filed an Emergency and Assented to Motion to Appoint a Chapter 11 Trustee.  On October 16, 2015, the Court granted the Motion and subsequently approved the appointment of Harold B. Murphy as the Chapter 11 Trustee.  On October 29, 2015, the DOE filed a "Motion to Approve Stipulation Addressing, but not Settling, the Parties' Respective Rights to Certain Intellectual Property" ("Motion to Approve the Stipulation") relating to certain rights associated with the intellectual property described in a U.S. patent application (number 13/818,960).[10]  The Stipulation provided "the United States with additional time to request title to the invention described in the [Patent] Application and [to] require the Trustee to take actions necessary during that time

---

[10] The DOE stated:  "The Debtor was the recipient of a DOE grant agreement ("DOE Grant") captioned "Multi-Scale Systems Biology of Low-Dose Carcinogenesis Risk" and referenced as grant agreement DE-SC0002606."  It added: "Funded by the DOE Grant and another federal grant from the National Aeronautical and Space Administration ("NASA") (captioned as grant NNJ06HA28G), the Debtor's research led to the filing of the Application."

to prevent the Application from being deemed abandoned." In order to avoid abandonment, the DOE requested that the status quo be maintained to benefit the bankruptcy estate by preventing the United States from requesting immediate title to Application, and to provide additional time for the United States and the Trustee to determine the proper course of action going forward. On October 30, 2015, the Court granted the Motion to Approve the Stipulation to preserve the status quo; the Court did not determine any substantive rights.

On October 30, 2015, the Steward Entities filed a "Motion for Allowance and Immediate Payment of Administrative Expense Claim" (the "Motion for Allowance of Administrative Claim"). Steward contended that the Debtor's extended occupancy in the Leased Premises past the expiration of the Lease resulted in at least $90,856.26 in post-petition, unpaid rent, which the Steward Entities argued was entitled to administrative priority pursuant to 11 U.S.C. §§ 503(b) and 507(a). Steward also stated that it continued to incur costs to maintain the Biological Materials, which costs were also entitled to administrative priority.

In August of 2015, the Debtor moved for a deadline for filing proofs of claim. The Court granted the Debtor's motion and established October 30, 2015 as the bar date for filing proofs of claim. According to the Court's Claims Registry Summary, the total claims filed in the Chapter 11 case totaled $19,909,632.38. Creditors holding secured claims filed claims totaling $270,725.00; creditors holding priority claims filed claims totaling $200,892.12. As noted in note 2, *supra*, Hahnfeldt, Hlatky and Lamont timely filed proofs of claim, as did Steward and

16

SSEMC.  Three entities filed additional claims after the bar date of October 30, 2015.  Those claims totaled $54,884.23: a former employee filed a priority claim in the amount of $8,178.80, the Internal Revenue Service filed a priority claim in the amount of $7,000.00, and ADP Tax Services filed a general unsecured claim in the amount of $39,705.43.

On November 12, 2015, the Court allowed the Joint Motion to Continue Hearings and Extend Response Deadline filed by the Chapter 11 Trustee and Steward Entities.  Pursuant to their motion, the parties requested the Court to continue the hearing on Steward's Motion for Relief from Stay and Motion for Allowance of Administrative Claim and extend the deadlines within which the Trustee was required to file a response.  The Court rescheduled the hearings for December 15, 2015, and extended the deadline for the Trustee to file responses to to December 11, 2015.  On December 9, 2015, the Trustee filed another Motion to Extend Time due to discussions regarding a consensual resolution of the issues raised by the Motion for Relief from Stay and Motion for Allowance of Administrative Claim.  The Court allowed that Motion on the same day, and, on December 14, 2015, rescheduled the hearings for January 19, 2016.

On November 19, 2015, the Trustee filed an Application to Employ Hoffman Alvary & Company LLC ("Hoffman Alvary") as a broker ("Application to Employ Broker") to serve as "intellectual property disposition consultant and broker to assist the trustee in sale of the Debtor's intellectual property portfolio and related assets."  Specifically, the Trustee sought the broker's skills in

marketing, selling, and disposing of the Debtor's intellectual property and other

assets (the "Intellectual Property").  The same firm had been employed by the

Debtor to attempt to monetize five of the Debtor's patents.  In the absence of

objections, the Court granted the Application to Employ Broker on December 4,

2015.

On January 12, 2016, the Trustee and the Steward Entities filed another

Joint Motion to Continue Hearings and Extend Response Deadline.  The Court

granted the parties' request and rescheduled the hearing to February 23, 2016.

Several days later, on January 15, 2016, Hlatky filed a Motion for Relief from

the Automatic Stay, seeking the following relief:

> granting Hlatky relief from the automatic stay provisions of 11
> U.S.C. § 362 for the purposes of allowing Hlatky to continue the Civil
> Action against the Debtor on the condition that Hlatky shall (A) limit
> her recovery in the Civil Action as it relates to the Debtor to available
> insurance proceeds and to rights, such as indemnification rights, that
> the Debtor may have against third parties, including Steward,
> whether under a settlement agreement between the Debtor and
> Steward or otherwise, that pertain to Hlatky's state court claims
> against the Debtor and (B) waive any distribution from the Debtor
> and the Debtor's estate that she might otherwise receive on account
> of her Proof of Claim, or any other matter without prejudice to
> Hlatky maintaining the State Court Claims and Patent Claims solely
> for defensive set-off purposes and without waiving any standing in
> the Debtor's case.

Hlatky also sought authority to continue the Civil Action against Horowitz

without any limitations.[11]  On May 17, 2016, the Court orally granted Hlatky's

---

[11] In her state court complaint attached to her Motion, Hlatky disclosed that she
had contacted the Attorney General to express her concerns about misuse of grant
funds by Horowitz.  She asserted claims against the Debtor and Horowitz for

Motion for Relief from Stay and, on May 26, 2016, entered a written order to that effect. The order contained a specific reference to the waiver of any distribution from the Debtor's bankruptcy estate.

On February 1, 2016, Hahnfeldt filed a Motion seeking the following relief: "1) an Order Compelling the Debtor to Disclose to the Interested Parties the April 16th Agreement struck between Steward . . . and . . . Genesys . . . in Light of the Continued Consideration Thereof in This Court for Approval and Enforcement; or In the Alternative, 2) the Granting to the Movant Authority to Examine the Debtor and Certain of its Fiduciaries, Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure" ("Hahnfeldt's Motion for Prepetition Agreement Disclosure"). Specifically, Hahnfeldt sought production of the prepetition Steward Settlement Agreement.[12] Alternatively, Hahnfeldt requested an order

---

wrongful termination, retaliatory discharge in violation of 31 U.S.C. § 3730(h), and tortious interference with contractual relations and advantageous business relations,

[12] In their proofs of claim, the Steward Entities stated in pertinent part:

> This Claim arises from the parties' Settlement Agreement and Mutual General Release dated April 16, 2015 . . . and their Agreement of Lease. . . . The Settlement Agreement is confidential and has not been attached to this Claim but has been provided to the Court in camera. . . . The Settlement Agreement resolved various disputes between the parties related to an action commenced by Steward against GRI in the Massachusetts Superior Court for Suffolk County, captioned as Steward Health Care System LLC and Steward St. Elizabeth's Medical Center of Boston, Inc., vs. Genesys Research Institute, Inc., Civil Action No. 14-2382–BLS on or around July 25, 2014 (the "Steward Action"). . . .

granting him the opportunity to conduct an examination of the principals of the Debtor pursuant to Fed. R. Bank. P. 2004.   On February 5, 2016, the Debtor's principals, Charles J. Newman and David Horowitz,[13] filed an opposition to Hahnfeldt's Motion for Prepetition Agreement Disclosure.  On February 16, 2016, the Steward Entities, after filing a preliminary response, also filed a Response and Opposition to Hahnfeldt's Motion for Prepetition Agreement Disclosure, contending, among other things, that all of the matters Dr. Hahnfeldt wished to investigate were considered in an order entered by the Court on December 23, 2015 in conjunction with the Expedited Motion of Clare Lamont to Unimpound the April 16, 2015 Agreement between the Steward Entities and Genesys and are "within exclusive province of the Trustee, as a duly-appointed Chapter 11 Trustee."   According to the Steward Entities, "[i]t is simply not within Dr. Hahnfeldt's right or power to bring preference actions or to litigate disputes over what assets constitute property of the estate. Indeed, any effort to do so would violate the automatic stay." The Steward Entities also contended that "whether or not his claim is valid, Dr. Hahnfeldt lacks standing to pursue the matters on which he bases his claim for relief. His curiosity and *personal interest* in these proceedings do no supply him with a *legal interest* or basis to subject Steward (or any other

_____

*See also* note 5, *supra.*

[13] In their Opposition, Horowitz and Newman identified Horowitz as "a member [sic], director and former president of the Debtor," and Newman as "a member [sic] and former director of the Debtor."

party to these proceedings) to discovery, or otherwise to arrogate himself to the rights and powers of the Trustee."

On February 16, 2016, the Trustee and the Steward Entities filed another Joint Motion to Continue Hearings and Extend Response Deadlines with respect to the Motion for Relief from Stay and the Motion for Allowance of Administrative Claim. On February 17, 2016, the Court granted the Joint Motion and rescheduled the hearing to March 29, 2016. On March 4, 2016, the Court scheduled a hearing on Hahnfeldt's Motion for Prepetition Agreement Disclosure for the same day.

On March 24, 2016, the Trustee filed an Assented to Motion to Extend Response Deadline, in which he represented that "[t]he Parties are in the process of memorializing a global resolution to their differences including, without limitation, with regard to the Motion for Relief and the Administrative Claim and expect to file a motion for approval of such resolution under Rule 9019 imminently."

On March 25, 2016, the Trustee filed a Motion by Chapter 11 Trustee, Pursuant to Bankruptcy Rule 9019 to Approve Settlement Agreement (the "Rule 9019 Motion"), together with a "Settlement Agreement Among and Between Steward Health Care System LLC and Steward St. Elizabeth's Medical Center of Boston, Inc. and Harold B. Murphy, as Chapter 11 Trustee For Debtor Genesys Research Institute, Inc." (previously identified as the "Settlement Agreement"). According to the signatories, the Settlement Agreement resolved all disputes between the Steward Entities and the bankruptcy estate, including the Motion for

21

Relief from Stay and the Motion for Allowance of Administrative Claim.  In view

of the Rule 9019 Motion, the parties requested, and the Court canceled, the hearing

on the Motion for Relief from Stay and the Motion for Allowance of

Administrative Claim scheduled for March 29, 2016.

Pursuant to the Settlement Agreement, the parties agreed that the Steward

Entities (1) would remit to the Trustee, within two business days after the Effective

Date (i.e., the first business day following the fourteenth (14) day after the entry of

orders by the Bankruptcy Court), $750,000.00 of the funds currently on deposit in

a BofA [Bank of America] Account (the "Settlement Payment"); (2) would assign

to the Trustee, within two business days after the Effective Date, without

representation or warranty, all of their right, title and interest in the equipment

presently located on the Leased Premises (the "Equipment"); and (3) would assign

to the Trustee, within two business days after the Effective Date, without

representation or warranty, all of their right, title and interest in the Intellectual

Property."  In addition, the Steward Entities agreed to waive and release claims

against the Debtor's estate including, without limitation, any right to file a claim

under 11 U.S.C. § 502(h) on account of the Settlement Payment, the transfer of the

Equipment, or the transfer of the Intellectual Property.  As noted in note 5, *supra,*

these claims totaled in excess of $16 million.

In exchange, the Trustee agreed to (1) release all claims against the Steward

Entities, including the claim of the estate in and to the BofA Account, which had a

remaining balance of $484,288.19 after the Trustee's receipt of the Settlement

Payment, and (2) return possession of the Leased Premises to Steward in "broom clean condition" without any Equipment and Biological Materials utilized or generated by the Debtor in the course of its research, which were to be removed under the supervision of a Licensed Site Professional.  The Trustee also agreed to vacate the Leased Premises on or before May 15, 2016, although the parties agreed that that date could be extended upon payment of rent to the Steward Entities in the amount of $7,500 for the first 30-day period, $10,000 for the second 30-day period, and $15,000 for the third 30-day period. The Trustee agreed to vacate the Leased Premises no later than August 12, 2016. The parties represented that the Settlement Agreement resolved all of their respective claims against each other and provided funding for the orderly administration of the Debtor's affairs.

On March 25, 2016, the same day he filed the Rule 9019 Motion, the Trustee filed a "Motion by Trustee for Order Authorizing Disposition of Biological Materials and Sale of Equipment by Public Auction Free and Clear of Liens, Claims, Encumbrances and Interests" ("the Sale/Disposition Motion"). The Trustee sought leave to dispose of the Biological Materials and to sell the Equipment by public auction, free and clear of all liens, claims, encumbrances, and interests pursuant to 11 U.S.C. § 363(f).  He also requested that the Court grant purchasers at the public auction protection under 11 U.S.C. § 363(m).  The Trustee represented in his motion that no party had stepped forward to take custody and control of the Biological Materials or other research materials since his appointment, despite his marketing efforts and the interest expressed by Hlatky

and others earlier in the case. The Trustee further represented he had no ability to reorganize and that he was required to liquidate the Debtor's assets in furtherance of his duties as Chapter 11 Trustee. Despite efforts by his broker, Hoffman Alvary, to monetize the Intellectual Property and related Biological Materials, no party had offered to take custody and control of the Biological Materials on terms that were beneficial to the estate. The Trustee argued that the costs and burdens of maintaining the Biological Materials were considerable because the gas tanks, needed to maintain the Biological Materials, had to be replaced on a weekly basis and the out-of-pocket costs incurred by the bankruptcy estate totaled approximately $600 per week. Consequently, the Trustee argued that the prompt disposition of the Biological Materials and sale of the Equipment was warranted and necessary.

Owing to the potentially hazardous nature of the Biological Materials, the Trustee proposed to employ Vertex, a licensed, environmental services professional to remove those materials and prepare the Equipment for auction. He observed that the removal of the Biological Materials was a substantial undertaking, possibly requiring up to thirty days and costing in excess of $100,000 to complete. The Trustee argued that the public sale of the Equipment he described in the Sale/Disposition Motion was the most efficient means to liquidate the property and generate interest from a variety of potential bidders in order to maximize the value of the Equipment.

In connection with the Sale/Disposition Motion, the Trustee filed an Application to Employ Paul E. Saperstein Co., Inc. as Auctioneer to Conduct Public Sale of Equipment. The Trustee proposed that the Auctioneer would conduct the public sale online as an internet auction in accordance with the Local Rule 6004 of the Local Bankruptcy Rules of the Untied States Bankruptcy Court for the District of Massachusetts, using the services of www.bidspotter.com, a procedure that would allow interested purchasers to participate from anywhere in the world.

On March 30, 2016 and March 31, 2016, the Court scheduled hearings for May 17, 2016 regarding the Rule 9019 Motion and the Sale/Disposition Motion, and other matters, including the Motion for Relief from Automatic Stay filed by Hlatky.[14]    The Court also granted the Trustee's Application to Employ the Auctioneer in the absence of objections.

---

[14] Hlatky moved for relief from the automatic stay provisions of 11 U.S.C. § 362. In her motion, she stated she sought relief for the following reason:

> [I]n order to continue her pending state court action against the Debtor on the condition that she (A) limits her recovery against the Debtor in the state court action to available insurance proceeds and to rights, such as indemnification rights, that the Debtor may have against third parties, including Steward . . . whether under a settlement agreement between the Debtor and Steward or otherwise, that pertain to Hlatky's state court claims against the Debtor and (B) waives any distribution that she might otherwise receive from the Debtor or the Debtor's estate with respect to (i) the claims asserted by her against the Debtor in the state court action and (ii) her contingent claim in an unknown amount related to potential patent proceeds.

On March 29, 2016, the Court held the hearing on Hahnfeldt's Motion for Prepetition Agreement Disclosure pursuant to which he sought disclosure of the April 16, 2015 Settlement Agreement between Steward and Genesys.  At the hearing the Trustee represented that the Steward Entities would make the Steward Settlement Agreement available to all parties in interest, thus rendering Hahnfeldt's motion moot.

Approximately two weeks after obtaining the Steward Settlement Agreement, Hahnfeldt filed an Expedited Motion for production of the "'Counterclaim' Writing" incorporated in the Steward Settlement Agreement.  The Court granted Hahnfeldt's motion on condition he execute a confidentiality agreement in a form satisfactory to the Trustee and Steward.  Hahnfeldt moved for reconsideration of that order, which the Court scheduled for May 17, 2016.

On May 13, 2016, three parties filed objections to the Rule 9019 Motion and to the Sale/Disposition Motion, including the DOE. The DOE in its Objection maintained that the United States had a right to control the Biological Materials and any research Equipment needed to continue DOE-funded research.  The DOE claimed that the interest of the United States encompassed the right to control the disposition of the project Equipment and Biological Materials, and it proposed that

---

In addition, as a protective measure, Hlatky sought relief from the automatic stay to pursue her claims in state court against David Horowitz ("Horowitz"), the former President of the Debtor (without any limitation to available insurance proceeds or otherwise).

the DOE and Hlatky designate a physical facility to accept transfer of the

Equipment and Biological Materials.[15]

---

[15] Specifically, the DOE stated:

> To the extent that the Research Equipment was purchased with DOE
> Grant funds or was purchased with federal funds and is needed to
> continue the DOE-funded Project (such Research Equipment shall be
> referenced collectively as "Project Equipment"), and to the extent
> that Materials relate to research funded by the DOE Grant, the
> United States maintains a property interest in the Project Equipment
> and the Materials. This interest encompasses the right to control the
> disposition of the Project Equipment and the Materials because such
> federal interest is outside the debtor's estate; and thus, outside the
> control of the Trustee. *See* Prior DOE Objection at ¶¶ 9-13, citing In
> re LAN Tamers, Inc., 329 F.3d 204 (1st Cir. 2003); Westmoreland
> Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 246 (3d Cir. 2001);
> In re Joliet-Will County Community Action Agency, 847 F.2d 430,
> 432-33 (7th Cir. 1988).
>
> With respect to the Project Equipment purchased with DOE funds,
> the regulations expressly provide that the recipient "shall use the
> equipment in the project or program for which it was acquired as
> long as needed, whether or not the project or program continues to
> be supported by Federal funds. . . ." 10 C.F.R. 600.134(c). If the Project
> Equipment was funded by a federal agency other than the DOE, the
> recipient's rights to use such equipment are restricted to use in
> support of federally-funded projects, such as the DOE Project here.
> *See* 2 C.F.R. § 200.313(c). Confirming such restriction, the federal
> regulations provide that a grant recipient may not sell or dispose of
> any funded equipment as long as it is still needed for activities
> currently or previously supported by a Federal awarding agency,
> including the DOE. 2 C.F.R. § 200.313(e) (contemplating disposition
> only if equipment "is no longer needed for the original project or
> program or for other activities currently or previously supported by
> a Federal awarding agency.").

(footnote omitted).

In his Objection to the Rule 9019 Motion and the Sale/Disposition Motion, Hahnfeldt argued that because the Debtor's counterclaims in connection with the prepetition Steward Action against Genesys had not been disclosed, a review of the Trustee's Settlement Agreement with the Steward Entities would be impossible. As such, he argued that the Court should deny the the Trustee's motions.

Hlatky filed a Limited Objection to the Trustee's Rule 9019 Motion and Sale/Disposition Motion. She maintained that a substantial portion of the property identified in the Rule 9019 Motion and the Sale/Disposition Motion was not actually property of the bankruptcy estate. Hlatky expanded upon the argument set forth by the DOE, arguing that the Court should find that the assets in question were held in trust by the Debtor for those government institutions such as the National Institute of Health and the DOE that funded her cancer research. Hlatky suggested that the Court evaluate (1) the degree and intensity of regulatory control over the property in question, (2) the role that the Debtor was intended to play, and (3) the extent to which recognition of the Debtor's greater ownership interest would thwart the overall purpose of the regulatory scheme. Hlatky also argued that the Debtor was merely the conduit through which federal grant money passed through to the researchers who obtained the grants. Hlatky contended that the Debtor purchased equipment for the sole purpose of enabling scientists to undertake their research and achieve the purposes stated in the grant applications.

At the hearing held on May 17, 2016, the Court orally granted the Rule 9019 Motion, finding that the compromise was fair and reasonable, applying the standard set forth in <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 185 (1st Cir. 1995) ("The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.").  The Court determined that the benefits of the settlement to the Debtor's estate were substantial as each party had asserted claims against the other, and that the cash component of the settlement, i.e., $750,000, when coupled with the elimination of sizeable claims of the Steward Entities against the estate, was reasonable in light of the substantial costs the Trustee would have to expend to litigate the Steward Entities's claims and the estate's claims against the Steward Entities, including any avoidance actions.  Because the <u>Jeffrey v. Desmond</u> factors weighed in favor of the Settlement Agreement, the Court granted the Trustee's Rule 9019 Motion.

Additionally, the Court overruled the objections by the DOE, Hahnfeldt and Hlatky to the Sale/Disposition Motion and orally granted that motion on May 17, 2016.  The Court overruled Hahnfeldt's objection on the grounds that his argument ignored the position of the Chapter 11 Trustee, namely his representation that he had insufficient funds to operate, and neither the Debtor

nor any party in interest had filed a plan of reorganization to either renew the Debtor's operations as a research center or to sell the research operation as a going concern to a third party. Specifically, the Trustee stated his concern that Hlatky "seem[ed] to want to put the financial burden on me to effectuate that removal and . . . not only is that impractical . . . I don't have the money . . . ."

In addition, the Court also rejected the arguments of Hlatky and the DOE that the research Equipment and Biological Materials were not property of the estate. The Court noted that it was unnecessary to definitively resolve that issue because when such an interest is in bona fide dispute, 11 U.S.C. § 363(f)(4) enables a trustee to expeditiously sell property before the dispute can be resolved. The Court determined that the DOE and Hlatky had failed to expeditiously or in a procedurally appropriately format bring any issues about property of the estate to the attention of the Court. Additionally, the Court determined that the sale of the Equipment was in the best interest of the bankruptcy estate, in part because it effectuated the Trustee's Settlement Agreement with the Steward Entities.

On May 17, 2016, the Court also denied Hahnfeldt's Motion to Reconsider with respect to the execution of a confidentiality agreement regarding the production of the "Counterclaim" referenced in the Steward Settlement Agreement. In addition, the Court orally granted Hlatky's Motion for Relief from the Stay.

30

On May 20, 2016, Hlatky filed a Notice of Appeal of the Sale/Disposition Order.  On June 3, 2016, Hlatky filed a Notice of Appeal of the Order Approving Settlement Agreement.

On May 19, 2016, and May 21, 2016, the Court entered written orders approving the Rule 9019 Motion and the Sale/Disposition Motion, respectively.

On May 24, 2016, Hahnfeldt filed his Reconsideration Motion with respect to the Order Approving Settlement Agreement and the Sale/Disposition Order. Hahnfeldt argued that the Trustee's Settlement Agreement ignored the Debtor's public, fiduciary responsibility in the nonprofit setting and was, therefore, unlawful.  Hahnfeldt also argued he and others had been waiting for the Debtor to solicit offers for the assets, including the Biological Materials and Equipment, from charitable entities to accommodate state laws.  Again Hahnfeldt argued that the Debtor disregarded its responsibility as a charity with fiduciary obligations incident to public funding by not soliciting bids for the assets from charitable entities, which would accommodate state laws.  Hahnfeldt contended that the Steward Entities blatantly misrepresented the "urgency" required with respect to the disposition of the Biological Materials and Equipment, because the freezers needing maintenance were not actually located in the Debtor's Leased Premises. In addition, he claimed that the Steward Entities and the Trustee fabricated the holdover tenancy component in the Trustee's Settlement Agreement.  Finally, Hahnfeldt argued that the Trustee ignored the public interest in failing to avail himself of a proposed transfer of the Biological Materials, "free of costs to the

estate,' to a location at Tufts University.  Hahnfeldt concluded that such disregard

for the interests of the public and the bankruptcy estate was likely reflective of

feelings of ill will from the Steward Entities seeking retribution against Hlatky and

others due to Hlatky's pending litigation against Steward and Horowitz in the

state court.

On May 26, 2016, the Trustee filed the Application to Employ Licensed Site

Professional.  The Trustee requested authority to employ Vertex to decommission

the Leased Premises in accordance with the Sale/Disposition Order and the Order

Approving Compromise.   The Trustee represented that Vertex was one of several

firms that bid on the job to decommission the premises in which the Biological

Materials are held, and that Vertex is a well-respected international technical

services firm that has the substantial experience necessary to perform the

decommissioning in a timely and cost-effective manner and to provide a requisite

"Decommissioning Report" in accordance with the Trustee's Settlement

Agreement.

On May 26, 2016, Hlatky filed her Objection and Cross Motion, objecting to

the Trustee's Application to Employ Licensed Site Professional, requesting

reconsideration of the Trustee's Sale/Disposition Motion, and, finally, requesting

that the Court defer any action pending the resolution of her appeal.   Hlatky

argued that the Court incorrectly concluded there was a bona fide dispute between

the DOE and the Trustee in applying 11 U.S.C. § 363(f)(4) in permitting the sale of

Equipment and destruction of the Biological Materials.  Hlatky argued that there

was no viable dispute because the Trustee, having the burden of proving the existence of a bona fide dispute under § 363(f)(4), could not establish the lab assets were property of the estate. Hlatky further observed that the Trustee conceded that the Biological Materials and Equipment that he intended to sell or discard were obtained with federal funds. Hlatky also maintained that the Court erred in ruling that the United States and Hlatky were guilty of laches. Hlatky contended that the petition was filed less than a year ago, in July of 2015, and that the United States first made the argument that the specimens were not property of the estate in its September 15, 2015 Objection to Steward's Motion for Relief from Automatic Stay. Hlatky averred that because the argument was originally raised in September, there was no delay in asserting that position. Alternatively, as noted above, Hlatky requested that the Court stay the order allowing the Trustee's Application to Employ Licensed Site Professional until after the resolution of her appeal.

On May 27, 2016, Lamont filed an Objection to the Trustee's Application to Employ Licensed Site Professional. She asserted that both the Trustee and the Steward Entities misled the Court as to what constitutes the Leased Premises and that it is unclear what, if any, Biological Materials are being stored in either the Leased Premises or elsewhere. Lamont argued that the lack of transparency about the Leased Premises could be detrimental to the estate if the Trustee were to pay Vertex for clean-up services outside the Leased Premises. Lamont also asserted that misrepresentations were contained in the Trustee's Settlement Agreement,

namely that Hoffman Alvary marketed the Biological Materials to the Debtor's former researchers but received no acceptable purchase offers. Lamont claimed that the Trustee had "behind-the-scenes" conditions attached to the purchase of the Biological Materials, including alleged conditions that the samples could only be bought in conjunction with the Intellectual Property and that the researchers would have to give up all their claims against the bankruptcy estate, some of which were considerable. She argued that such undisclosed conditions, beyond just the cost, made the purchase of the Biological Materials untenable. Finally, Lamont questioned how Steward, a for-profit company, would be authorized to take ownership of the BofA account in the amount of $484,288.19.

On May 27, 2016, Hahnfeldt filed a Notice of Appeal of the Sale/Disposition Order, the Order Approving Settlement Agreement, as well as the denial of his Motion for Reconsideration regarding the Debtor's counterclaims against Steward.

The Court held a hearing on June 6, 2016 on the various motions to reconsider and objections to the employment of Vertex. At the hearing on June 6, 2016, Hlatky submitted a letter to the Court from Dr. Lauren Linton ("Linton"), the Deputy Director of Tufts Institute for Innovation ("TII") in Boston, Massachusetts. Linton, noting that Hlatky and Hahnfeldt were now affiliated with TII, expressed an interest in incorporating the Biological Materials and Equipment into the TII program "to immediately resume the mission of cancer systems biology research for the public, as intended and funded by the federal agencies."

34

Linton also claimed endorsement of the proposed plan by federal granting agencies, including the DOE, as well as the Department of Justice. Linton did not include any discussion or suggestion about the payment of funds by TII to the Trustee for the Biological Materials and Equipment. Due to the expression of interest by TII, the parties requested a continuance of the hearing. The Court approved the request and continued all matters to June 13, 2016 to enable the parties to reach a consensual resolution and to enable the Trustee to explore the acquisition of certain items by TII.

At the hearing on June 13, 2016, the parties reported that they were unable to reach an accord. The Trustee reported that earlier that morning TII had made an offer for the Equipment, which it conditioned upon acceptance before the hearing. At the hearing, he stated that he rejected the offer made by TII as inadequate. The Trustee also reported that he had no objection to giving Hlatky the Biological Materials and her work product. A representative of TII appeared at the hearing and stated that TII did not wish to purchase the Equipment at auction and that it may wish to submit another offer for all assets. The Court stated that it would give the parties two days to finalize any agreement. Nevertheless, the parties requested decisions on the various pending matters. Accordingly, the Court took the motions and objections under advisement.

## III.    POSITIONS OF THE PARTIES

Hlatky asks that the Court reconsider the Sale/Disposition Order on the grounds that the Court erred in ruling that ownership of the Equipment and

Biological Materials were in bona fide dispute and could be sold under 11 U.S.C.

§ 363(b)(4). She seeks an evidentiary hearing as to whether the Equipment and

Biological Materials are excluded from the definition of property of the estate

under 11 U.S.C. § 541(a) and (d) because the Debtor received federal grant funds.

She relies upon, inter alia, the decision of the United States Court of Appeals for

the First Circuit in City of Springfield v. Ostrander (In re LAN Tamers, Inc.), 329

F.3d 204 (1st Cir. 2003), in support of her argument that the Equipment and

Biological Materials were not part of the bankruptcy estate and the Trustee could

not sell them. She also asserts that the Court erred in finding her and the United

States guilty of laches in failing to raise the issue of the ownership of the

Equipment and Biological Materials until the sale hearing. Hlatky also seeks an

order denying the employment of Vertex to assist the Trustee in implementing the

Sale/Disposition Order, or alternatively staying or deferring action pending her

appeal of the Sale Order.[16]

Hahnfeldt seeks reconsideration of both the Sale/Disposition Order and the

Order Approving Settlement Agreement, arguing that the Biological Materials

---

[16] Hlatky filed her notice of appeal from the sale and disposition orders on May 20, 2016 before she filed her requests for reconsideration of the sale and disposition orders. Hahnfeldt filed his motion for reconsideration of the sale, disposition and compromise orders on May 24, 2016. Pursuant to Fed. R. Bankr. P. 8002(b)(2), and the analogous Fed. R. Bankr. P. App. P. 4(4)(B)(i), this Court continues to have jurisdiction of both Hlatky's and Hahnfeldt's requests for reconsideration of the order approving the sale as the appeal is suspended until any motion for reconsideration is disposed of by the trial court.

should be moved to another nonprofit entity, seemingly free of charge, that the sale and asset disposition pursuant to the Sale/Disposition Order are not in compliance with state law, that there is no urgent need for the Trustee to compromise with Steward, and that the Trustee should not remove and decommission the Equipment and Biological Materials at the bankruptcy estate's expense.

Lamont asserts that the Trustee's proposal for disposing of Biological Materials and research Equipment is flawed, that the estate should not pay for the cleanup of premises that were not used by the Debtor for Equipment or other materials, and that the assets were not fairly marketed to former researchers employed by the Debtor or in accordance with non-bankruptcy law.

## IV.  DISCUSSION

A.  <u>Hahnfeldt's Motion for Reconsideration and Hlatky's Objection and Cross Motion to the Sale/Disposition Order</u>

1. Law Applicable to Reconsideration Motions

In seeking reconsideration of the Sale/Disposition Order, neither Hahnfeldt nor Hlatky reference either Fed. R. Bankr. P. 9023 or Fed. R. Bankr. P. 9024, which make Fed. R. Civ. P. 59 and Fed. R. Civ. P. 60, respectively applicable to bankruptcy cases.  Rule 60(b) provides in pertinent part the following:

(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence which by due diligence
> could not have been discovered in time to move for a
> new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or
> extrinsic), misrepresentation, or other misconduct of
> an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or
> discharged, or a prior judgment upon which it is based
> has been reversed or otherwise vacated, or it is no
> longer equitable that the judgment should have
> prospective application; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  In RBSF, LLC v. Franklin (In re Franklin), 445 B.R. 34 (Bankr.

D. Mass. 2011), this Court observed: "In bankruptcy cases, courts in this district

routinely hold that motions for reconsideration are not 'a means by which parties

can rehash previously made arguments' and that to succeed on motions to

reconsider, the movant must 'show newly discovered evidence or a manifest error

of fact or law.'" Id. at 45 (quoting In re Wedgestone Fin., 142 B.R. 7, 8 (Bankr. D.

Mass. 1992)).  In Franklin, the court observed:

> According to the United States Court of Appeals for the First Circuit,
> in the context of a motion to vacate a default judgment, Rule 60(b)(6),
> "is a catch-all provision" and "[t]he decision to grant or deny such
> relief is inherently equitable in nature." Ungar v. The Palestine
> Liberation Organization, 599 F.3d 79, 83 (1st Cir. 2010) (citing United
> States v. One Star Class Sloop Sailboat, 458 F.3d 16, 25–26 & n. 10 (1st
> Cir. 2006); and Teamsters, Chauffeurs, Warehousemen & Helpers
> Union, Local No. 59 v. Superline Transp. Co., Inc., 953 F.2d 17, 19–20
> (1st Cir. 1992)). According to the First Circuit, however, "it is the
> invariable rule, and thus, the rule in this circuit, that a litigant, as a
> precondition to relief under Rule 60(b), must give the trial court
> reason to believe that vacating the judgment will not be an empty
> exercise." Teamsters, 953 F.2d at 20. Additionally,

> A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances. This compendium is neither exclusive nor rigidly applied. Id. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may-or may not-justify the extraordinary remedy of vacatur.

In re Franklin, 445 B.R. at 45 (quoting Ungar, 599 F.3d at 83–84 (footnote omitted, citations omitted).

Federal Rule of Bankruptcy Procedure 9023 provides that "[a] motion . . . to alter or amend a judgment shall be filed . . . no later than 14 days after entry of the judgment." Specifically, as stated by the court in Mujica v. First Bank Puerto Rico (In re Mujica), 470 B.R. 251 (Bankr. D. P.R. 2012), aff'd, 492 B.R. 355 (D. P.R. 2013),

> Fed. R. Civ. P. 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. The motion must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to reverse its earlier decision. Jimenez v. Rodriguez (In re Rodriguez), 233 B.R. [212] at 218 [(Bankr. D. P. R. 1999), aff'd, 17 F.App'x 5 (1st Cir. 2001)]. The movant "must either clearly establish a manifest error of law or must present newly discovered evidence". Id. at 218. The party cannot use a Fed. R. Civ. P. 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court. A party may not use this type of motion to raise novel legal theories that could have been addressed in [the] first instance. Id. at 218. Federal courts have consistently stated that a motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources. Id. at 218. In practice, Fed. R. Civ. P. 59(e) motions are typically denied because of the narrow purposes for which they are intended. Id. at

218. *Also see* <u>Global NAPs, Inc. v. Verizon New Eng., Inc.</u>, 489 F.3d at 25 (motions under Rule 59(e) are reviewed for abuse of discretion, reversing only where "the original judgment evidenced a manifest error of law . . . or in certain other narrow situations"). A party moving for Rule 59(e) relief may not repeat arguments previously made. <u>Prescott v. Higgins</u>, 538 F.3d 32, 45 (1st Cir. 2008). Nor may a party use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that "could, and should, have been made before judgment issued." <u>Soto–Padr ó v. Public Bldgs. Auth.</u>, 2012 U.S. App. LEXIS 5144 at *21, 2012 WL 762968 at *7 (1st Cir. March 12, 2012). It is therefore exceedingly difficult for a litigant to succeed in a Rule 59(e) motion. *Also see* <u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>, 512 F.3d 46, 55 (1st Cir. 2008);

<u>In re Mujica</u>, 470 B.R. at 254.

2. Analysis

The Court granted, in part, the reconsideration motions when it continued the hearing from June 6, 2016 to June 13, 2016 for the limited purpose of enabling the Trustee to explore an agreement with TII, a period of time which did not result in an acquisition by TII of either the Equipment of Biological Materials or a settlement between the parties.   Accordingly, the Court concludes no further extension or relief from the Order Approving Settlement Agreement or Sale/Disposition Order is warranted as neither Hahnfeldt nor Hlatky has sustained their burdens for reconsideration under either Rule 59 or 60(b).   There are no new arguments or evidence that warrant relief from the Court's oral ruling entered on May 17, 2016 or its written order dated May 21, 2016; there were no manifest errors of fact or law warranting a decision to vacate the Sale Disposition Order.

Throughout this Chapter 11 case, Hahnfeldt has objected to motions filed by the Debtor and Trustee based on his belief that their conduct was, and is, contrary to the Debtor's former research mission.  He initially requested, at the inception of the case, that the Court afford researchers time to relocate the Biological Materials which the Court approved.  In denying the Debtor's Notice of Intent to Abandon, the Court required Steward to maintain the status quo pending further order of the Court.  Hahnfeldt's Reconsideration Motion is simply a rehash of his request for more time, when ample time has already been granted.  This case is close to one year old.  Other than the Trustee's motions, no specific proposals for acquisition or relocation of the Debtor's Biological Materials or Equipment has been presented to this Court.

In connection with their objections to the Sale/Disposition Motion and again in their Reconsideration Motions, Hahnfeldt and Hlatky request that the Court order *cy pres* relief.  The Court concludes that neither Hahnfeldt nor Hlatky is a proper party to assert such requests for the following reasons.  Neither has asserted an ownership interest in the Biological Materials or Equipment. Hahnfeldt and Hlatky have not represented that they received grant funds in their individual capacities; they have not asserted that the Center of Cancer Systems Biology received funds directly; and they have not asserted that they will be culpable or in any way personally and legally responsible if the sale or disposition of either the Biological Materials or Equipment results in a misuse of federal or other grants.  While they had standing to object to the Sale/Disposition Motion in

41

their capacities as creditors of the bankruptcy estate, they have not established that they are personally aggrieved by the Sale/Disposition Order.  In other words, to the extent they seek determinations from this Court that the Biological Materials or Equipment are not property of the estate, their position runs counter to the interests of the Debtor's creditors and, ironically, their own financial (as opposed to professional) interests, as excluding the Equipment and requiring the Trustee to maintain the Biological Materials diminishes the potential distribution to creditors.

Moreover, in seeking relief from the automatic stay, Hlatky agreed to waive any distribution from the Debtor's estate on account of her proof of claim, to the extent that those distributions are sought in her action against the Debtor and Horowitz.  Accordingly, her standing as a creditor has been eliminated or is tenuous at best.  Assuming, arguendo, she remains a party in interest as a result of her timely filed proof of claim, the Court shall consider her arguments.

At the hearing on the Debtor's Notice of Intent to Abandon, the Massachusetts Attorney General appeared and objected, representing that she wished to explore options to relocate the Debtor's research.  Indeed, the Court directed that the Debtor and the Attorney General attempt to identify another institution to receive the Biological Materials and Equipment.  Since that time, the Attorney General, as the party statutorily charged with overseeing non-profit institutions, has not filed a *cy pres* action and been involved in the case.  Specifically the Attorney General did not report on any results of an investigation or seek

further relief.  The Attorney General did not object to the Sale/Disposition Motion (or Rule 9019 Motion).

The DOE played a much more active role in the case.  It filed an Objection to the Sale/Disposition Motion requesting the following relief:  "[o]n or before May 20, 2016, Dr. Hlatky and the DOE may jointly designate a physical facility (Facility) to accept transfer of the Project Equipment and Materials from the Estate. Promptly following the designation, the Trustee shall arrange with Dr. Hlatky a mutually-agreeable means to transfer the Project Equipment and Materials to the Facility. If means of transfer cannot be agreed upon on or before May 27, 2016, the Trustee would then be authorized to dispose of the Materials through a Licensed Site Professional."  Notably, the parties were unable to report to the Court that an agreement as to a means of transfer was reached and the DOE did not file a Notice of Appeal from the Court's Sale/Disposition Order.

In short, no proposals were presented to this Court other than that set forth in the Sale/Disposition Motion. The Trustee employed Hoffman Alvary to attempt to find an acquirer with no success.  Moreover, the Trustee has represented that he has met with the Debtor's former employees, and they have not made any meaningful proposals for acquisition or transport of the Biological Materials or Equipment.  To date, the Trustee is the only party with concrete proposals aimed at providing distributions to creditors.

In support of his Reconsideration Motion, Hahnfeldt asserts that the Trustee and/or the Steward Entities have misled the Court in connection with the

Debtor's occupation of its premises at SSEMC and that the Debtor's Biological

Materials are located in areas of St. Elizabeth's Hospital that are not leased by the

Debtor.  At the hearing on the Notice of Intent to Abandon, the Court ordered that

Steward take no action to remove the Debtor's Biological Materials and ordered

that it maintain the status quo, including keeping the electricity and refrigeration

operable to preserve samples and other biological research materials, pending

further order of the Court.   Steward complied with that order, although the

Steward Entities also filed a Motion for Immediate Payment of Administrative

Claim for the Debtor's postpetition use and occupancy of the Leased Premises, in

the sum of $90,856.26.  Regardless of Hahnfeldt's ostensible new evidence about

use of space in addition to Leased Premises, if the Equipment or Biological

Materials are located somewhere other than the Leased Premises, the Steward

Entities would be entitled to the payment of use and occupancy for that space.

3. Applicable Law under Section 363

It is frequently stated that the estate representative, namely a debtor in

possession or Chapter 11 trustee, should be authorized to conduct a sale if the

decision is supported by "reasonable," "proper" or "sound" business judgment, a

rule commonly referred to as the "business judgment test."  In In re SW Boston

Hotel Venture, LLC, No. 10-14535-JNF, 2010 WL 3396863 (Bankr. D. Mass. Aug.

27, 2010), this Court, in the context of a proposed sale by a debtor in possession,

stated:

Section 363(b) of the Bankruptcy Code provides that a trustee "after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A Chapter 11 debtor in possession has the power of a trustee to use or lease property of the estate under § 363(b). *See* 11 U.S.C. §§ 1107, 1108. Courts approve a Chapter 11 debtor in possession's use, sale or lease of property of the estate where the debtor has used reasonable business judgment and articulated a business justification for such use. *See, e.g.,* In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992). Commonly referred to as the "business judgment" test, the standard applies to a debtor's decision to enter into a postpetition lease of real estate. *See* In re Six Forks LHDH, LLC, No. 10–01254–8–SWH, 2010 WL 1740544, at *1–2 (Bankr. E.D.N.C. April 28, 2010) (recognizing that the business judgment test applies to a proposed lease and denying the debtor's request for authority to enter into the lease for lack of information regarding the lessee's financial viability and the lease's long-term market terms). Evidence that a debtor in possession has used reasonable business judgment and has articulated a business justification for a lease transaction includes generation of revenue which will benefit the estate. *See, e.g.,* In re Ernst Home Ctr., 209 B.R. 974, 980 (Bankr. W.D.Wash.1997). In evaluating a debtor's exercise of business judgment, courts afford that debtor some deference because the debtor is familiar with its business and industry. "A debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." In re Cadkey Corp., 317 B.R. 19, 22–3 (D. Mass. 2004); *see* In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (internal quotations and citations omitted).

In re SW Boston Hotel Venture, LLC, 2010 WL 3396863, at *3. *See also* In re MF Global, Inc., 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015)("A trustee generally satisfies the business judgment standard if he 'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"). An order approving a sale is committed to the bankruptcy judge's discretion and should not be vacated absent a clear showing of abuse of discretion. *See* Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998).

With respect to §363(b)(4), permitting sales free and clear of property interests subject to bona fide dispute, property of the estate is broadly defined under 11 U.S.C. § 541, and includes all legal and equitable interests of the debtor existing as of the commencement of the case. 11 U.S.C. § 541(a)(1).  In a Chapter 11 case, where a trustee has been appointed, the trustee, just like a debtor in possession, has authority to propose and conduct a sale of property of the estate. The purpose of the power to sell "free and clear" is to avoid delay over disputes about validity of liens or interests.  *See* In re Mundy Ranch, Inc., 484 B.R. 416, 422-32 (Bankr. D. N. M. 2012).  The overwhelming majority of courts interpret the power to sell free and clear of interests expansively and permit sales free and clear of claims and interests.  *See* In re Trans World Airlines, Inc., 322 F. 3d 283, 289 (7th Cir. 2003).

The Bankruptcy Code is silent as to how and when a court should determine whether property subject to a proposed sale is property of the estate. Although the Federal Rules of Bankruptcy Procedure contemplate the filing of an adversary proceeding to determine the extent of an interest in property of the estate, *see* Fed. R. Bankr. P. 7001(2), it is not necessary for a trustee to commence an adversary proceeding to determine that property is property of the estate prior to filing a motion to sell.  The Bankruptcy Code simply provides that the estate representative has the authority to conduct a sale of estate property free and clear of any lien or interest of an entity if at least one of five conditions are satisfied.  11 U.S.C. § 363(f)(1)-(5).  A sale free and clear of an interest of another party is

expressly permitted under 11 U.S.C. § 363(f)(4) where interests are in bona fide

dispute. 11 U.S.C. § 363(f)(4). "The purpose of § 363(f)(4) is to permit property of

the estate to be sold free and clear of interests that are disputed by the

representative of the estate so that liquidation of the estate's assets need not be

delayed while such disputes are being litigated." <u>Moldo v. Clark (In re Clark)</u>, 266

B.R. 163, 171 (B.A.P. 9th Cir. 2001)(citing 3 Lawrence P. King, *Collier on Bankruptcy*

¶ 363.06 (15th ed. rev. 1998)).[17] In <u>In re Pierce</u>, 384 B.R. 477 (Bankr. S.D. Ohio 2008),

the court observed:

> [S]ection § 363(f)(4) . . . specifically enables trustees to sell property
> free of any liens when the obligations are in bona fide dispute.
> Courts have held that "a bona fide dispute" exists when, ". . . there
> is an objective basis for either a factual or legal dispute as to the
> validity of the debt." <u>Union Planters Bank, N.A. v. Burns (In re
> Gaylord Grain L.L.C.)</u>, 306 B.R. 624, 627–28 (8th Cir. BAP 2004)
> (citations omitted). Nothing in section 363 requires a trustee to
> commence an adversary prior to sale, where there is an established
> bona fide dispute, and no such requirement can be found in
> Bankruptcy Rule 6004 that governs sales. <u>In re Downour</u>, 2007 WL
> 963258 *1 (Bankr. N.D. Ohio 2007); <u>In re Gaylord Grain L.L.C</u>, 306
> B.R. at 628; <u>In re Collins</u>, 180 B.R. 447, 452 n. 8 (Bankr. E.D. Va. 1995);
> <u>In re Oneida Lake Development, Inc</u>., 114 B.R. 352, 358 (Bankr.
> N.D.N.Y. 1990).

<u>In re Pierce</u>, 384 B.R. at 482. In <u>In re Octagon Roofing</u>, 123 B.R. 583 (Bankr. N.D.

Ill. 1991), the court considered the meaning of "bona fide dispute." stating:

> The term "bona fide dispute" is not defined in § 363(f)(4) of the Code.
> However, the term "bona fide dispute" is also used in the
> Bankruptcy Code at 11 U.S.C. § 303 in connection with the nature of

---

[17] The Court added: "Typically, the proceeds of sale are held subject to the
disputed interest and then distributed as dictated by the resolution of the dispute;
such procedure preserves all parties' rights by simply transferring interests from
property to dollars that represent its value." <u>Id.</u>

claims asserted as basis for an involuntary Chapter 7 petition. To determine in this Circuit what constitutes a bona fide dispute, "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt." In re Busick, 831 F.2d 745, 750 (7th Cir. 1987). Under this standard, a court need not determine the probable outcome of the dispute, but merely whether one exists. Id. No authority has been cited showing that "bona fide dispute" has any different meaning when used in 11 U.S.C. § 363(f)(4), . . . This Court rejects cases from other jurisdictions cited by Trustee that implied or found that merely alleging a dispute is enough to meet the burden under 11 U.S.C. § 363(f)(4). The standard in Busick requires, at least in this Circuit, some factual grounds to show that there is "an objective basis" for the dispute. In the context presented here, that standard requires evidence, and such evidence was presented.

In re Octagon Roofing, 123 B.R. at 590.

Section 363(f)(4) does not contemplate or require that the court resolve or determine any dispute about ownership before a sale hearing, but rather requires only an examination of whether there is an objective basis for either a factual or legal dispute about ownership. See In re Revel AC, Inc., 802 F.3d 558, 573 (3d Cir. 2015) ("the mere filing of a declaratory judgment action doesn't itself create a bona fide dispute under § 363(f)(4), even if Article III's "case or controversy" requirement has been met. The latter ensures only that the declaratory judgment plaintiff has standing and a redressable injury. . . . 'Bona fide dispute' in the § 363(f)(4) context means that there is an objective basis—either in law or fact—to cast doubt on the validity of [the interest]."). In re Robotics Vision Sys., Inc., 322 B.R. 502 (Bankr. D. N. H. 2005), the court summarized the law applicable to § 363(f)(4) as follows:

The reported cases reveal a wide range of evidentiary requirements that must be met before a court may make a determination that a bona fide dispute exists. <u>Union Planters Bank v. Burns (In re Gaylord Grain L.L.C.)</u>, 306 B.R. 624, 627 (8th Cir. BAP 2004) (evidence must be provided to show factual grounds that there is an objective basis for a dispute); <u>In re Octagon Roofing</u>, 123 B.R. at 590 (mere allegation of bona fide dispute without evidence is not sufficient); <u>In re Oneida Lake Dev.</u>, 114 B.R. 352, 357 (Bankr. N.D.N.Y. 1990) (where a sale needed to be concluded before an evidentiary hearing could be conducted, allegations in an objection to sale were sufficient to raise a bona fide dispute over the avoidability of a lien). It appears the evidentiary record required to support a finding of a bona fide dispute for purposes of § 363(f) depends upon a case-by-case consideration of: (i) the procedural posture of the case, (ii) the need to expedite the sale, and (iii) the nature of the basis for determining that a dispute exists. *At a minimum, a party must articulate in a pleading or in an argument an objective basis sufficient under the facts and circumstances of the case for the court to determine that a bona fide dispute exists.*

<u>In re Robotic Vision Sys., Inc.</u>, 322 B.R. at 506 (emphasis supplied).  Finally, a party asserting an interest in property being sold has the burden of showing the validity and extent of its interest.  11 U.S.C. § 363(p)(2).

### 4. The Existence of a Bona Fide Dispute under§ 363(f)(4)

Hahnfeldt and Hlatky also seek reconsideration, arguing that the Court erred in approving the sale free and clear of liens, claims and interests, and in ruling that there was a bona fide dispute as to the ownership of the Biological Materials and Equipment.  Their argument ignores the record of proceedings in this case.   As the Court noted at the hearing on the Sale/Disposition Motion, the Debtor listed the Biological Materials as its property on Schedule B which it filed under penalty of perjury.  In its Statement of Financial Affairs, it described the Equipment as being held for Steward.  In view of the terms of the Settlement

Agreement and the Sale/Disposition Motion, Steward is not claiming an interest in the Equipment.   The Trustee asserted that the Equipment and Biological Materials were property of the Debtor's estate under 11 U.S.C. § 541, even if purchased with federal or other charitable grants.   The DOE was the only party asserting an actual interest in some, but not all, Equipment when it stated:

> To the extent that the Research Equipment was purchased with DOE Grant funds or was purchased with federal funds and is needed to continue the DOE-funded Project (such Research Equipment shall be referenced collectively as "Project Equipment"), and to the extent that Materials relate to research funded by the DOE Grant, the United States maintains a property interest in the Project Equipment and the Materials. This interest encompasses the right to control the disposition of the Project Equipment and the Materials because such federal interest is outside the debtor's estate; and thus, outside the control of the Trustee.

(footnote omitted).   As noted above, the DOE did not appeal the Sale/Disposition Order.

Neither Hahnfeldt nor Hlatky established that either Hlatky or the Center of Cancer System Biology had an interest in the property being sold.   Hlatky simply argued that the Biological Materials were federally funded.   Both she and Hahnfeldt insist that the Debtor's research should continue using the Equipment and Biological Materials.   Significantly, neither she nor Hahnfeldt proposed a plan of reorganization.   More significantly, they do not appear to recognize that there are no funds in the bankruptcy estate with which to restart the Debtor's research mission which ended with the termination of all but one employee in September of 2015 or to maintain the status quo indefinitely.   Neither Hahnfeldt nor Hlatky

has shown any rights or interests in, or to, the Equipment being sold, and neither

has standing to assert the rights or interests of the United States concerning

research grants, particularly where they have not alleged that they have any legal

exposure if the Biological Materials and Equipment are handled as contemplated

in the Sale/Disposition Order.  They have failed to cite any legal authority which

enables them to act on behalf of the United States or any other governmental entity

where the DOE did not appeal the Sale/Disposition Order and the Attorney

General, after its initial objection to the Notice of Intent to Abandon, has taken no

action in the case.  Hlatky apprised the Attorney General of her suspicions about

the misuse of funds by Horowitz prior to commencing her state court action.  She

and Hahnfeldt make references to contacts with the Attorney General's office.  If

the Attorney General is not compelled to act, this Court is compelled to infer that

her investigation revealed no misconduct or that any amounts in controversy are

insubstantial.  Although Hahnfeldt makes argument under 11 U.S.C. § 363(d),

neither the Attorney General nor the DOE cited or developed any arguments

under that section of the Bankruptcy Code.  To repeat, Hahnfeldt and Hlatky failed

to establish their standing to act on behalf of either the Attorney General or the

DOE.

As noted above, the DOE did not identify the Equipment or Biological

Materials that were purchased with federal grants and did not reference or

develop an argument under 11 U.S.C. § 363(d).[18]   Rather, it asserted that it had a

"property interest."   It asserted a right to make disposition instructions to the

Trustee.    Significantly, the DOE did not argue that the Biological Materials or

Equipment were its property, rather it simply asserted a property interest in the

continuation of research that it funded.   It also requested that the Trustee arrange

with Hlatky for a transfer of equipment or materials acquired incident to its grants

to a new facility by May 27, 2016, failing which the Trustee would then be

authorized to dispose of the assets.   The Court overruled the DOE's objection to

the Sale/Disposition Motion at the conclusion of the hearing, finding that there

was a bona fide dispute as to the interest of DOE in the assets being sold and that

the Equipment could be sold free and clear of such interest under 11 U.S.C. §

363(f)(4). Moreover, as there is no existing agreement among the parties as to a

transfer of any assets in which it asserted a property interest, the Court concludes

it has waived any reliance, to the extent applicable, on 11 U.S.C. § 363(d)(1).

The DOE supported the efforts of the Trustee and Hlatky to reach an

agreement on the disposition of the Equipment and Biological Materials by May

27, 2016, but no agreement was reached by that date and, as noted above, the DOE

did not appeal the Sale/Disposition Order and did not join either Hahnfeldt's

---

[18] Section 363(d) provides in pertinent part "The trustee may use, sell, or lease
property under subsection (b) or (c) of this section--(1) in the case of a debtor that
is a corporation or trust that is not a moneyed business, commercial corporation,
or trust, only in accordance with nonbankruptcy law applicable to the transfer of
property by a debtor that is such a corporation or trust."   While the DOE cited
various regulations, it did not cite 11 U.S.C. § 363(d)(1) in its filings with the Court.

Motion for Reconsideration or Hlatky's Objection and Cross Motion. Moreover, in connection with the Sale/Disposition Motion (and the Rule 9019 Motion), the Trustee stated that he did not object to the DOE or Hlatky taking possession of the Biological Materials, as long as a licensed site professional was employed at their expense. At the hearing on the Sale/Disposition Motion, the Trustee stated that because the Biological Materials are not indexed or catalogued, it is difficult, if not impossible, to determine whether and to what extent the Biological Materials were the product of federal grants. Furthermore, at the hearing on the reconsideration motions, the Trustee offered to provide Hlatky with copies of her data and research notes and Biological Materials to enable her to identify her work product. Indeed the Sale/Disposition Order gives Hlatky an opportunity to remove Biological Materials. She appears to have declined the offer.

In objecting to the Sale/Disposition Motion, Hlatky relied on the decision of the United States Court of Appeals for the First Circuit in City of Springfield v. Ostrander (In re LAN Tamers, Inc.), 329 F. 3d 204 (1st Cir. 2003), in support of the argument that the assets being sold were not property of the estate. In that decision, the City of Springfield commenced an action to determine its entitlement to reimbursement of monies, presently held by a private, nonprofit corporation. The issue was whether those monies were property of the bankruptcy estate of LAN Tamers, Inc., a telecommunications service provider. When LAN Tamers, Inc. filed its bankruptcy petition, it had already been paid in full for installation and maintenance of internet networks at various schools. The not-for-profit

corporation, identified as USAC, had already approved E-Rate funding for the projects. The court ruled that reimbursement rights from the federal government were property of the City of Springfield and were not property of the debtor's bankruptcy estate as the debtor, who was a service provider to the City of Springfield, was a mere conduit or agent for payment. The bankruptcy court determined that the reimbursements were not the property of the estate, but were held by LAN Tamers, Inc. in either a resulting trust or a constructive trust for the benefit of the City of Springfield. The First Circuit affirmed.

The Trustee, in his reply, distinguished <u>LAN Tamers</u>, pointing out that grants were awarded to the Debtor, that the funds were deposited directly into the Debtor's accounts without designation or restriction, and that the Debtor used funds for all of its operations. The Court agrees with the Trustee that the <u>LAN Tamers</u> decision is distinguishable. The Trustee references <u>Boston Reg'l Med. Cntr, Inc. v. Reynolds (In re Boston Reg'l Med. Cntr, Inc.)</u>, 298 B.R. 1 (Bankr. D. Mass. 2003), *aff'd,* 410 F.3d 100 (1st Cir. 2005), in support of the argument that a Chapter 11 debtor is entitled to use grants to pay its creditors, even after cessation of operations. In that case, the court observed:

> A hospital provides medical services by paying its physicians, nurses, technicians, pharmacists, and therapists to provide those services and by paying its suppliers, administrators, lenders, staff, utilities, independent contractors, etc., all of whom make it possible for the hospital to exist and function. When these individuals and entities are not paid contemporaneously with their provision of goods or services—virtually all are paid in arrears—they become creditors. Without payment of these creditors, a hospital, even a not-for-profit hospital, simply would not exist. The payment of creditors

> is essential and integral to the carrying on of the charitable mission of the hospital. Indeed, it is the creditors who carry out the charitable work.

Id. at 28.

The Court found that Hlatky and the DOE were guilty of laches in failing to obtain a determination of their claims that the Debtor was not the true owner of the assets before the Court prior to the sale.  Although the Court mistakenly used the word "years" in the plural referencing the duration of the case, the Court was well aware that the case had been pending for close to one year and, in hindsight, should have used the word "months." Nevertheless, the Court concludes that the parties asserting that the Debtor holds the Equipment or Biological Materials in trust have engaged in unreasonable delay in failing either to commence an adversary proceeding or to formulate a realistic proposal for the assets.   The Trustee lacks the financial resources to maintain the Equipment and Biological Materials and satisfy use and occupancy and other obligations, while Hahnfeldt and Hlatky pursue goals which are antithetical to the interests of creditors of the bankruptcy estate.  Hlatky first stated that she wished to form a new entity that would consider accepting the assets in a pleading filed on August 11, 2015, a scenario that has not materialized.   She and the DOE filed objections to Steward's Motion for Relief from Stay. Hlatky asserted that Biological Materials needed to be preserved, but she failed to present any informal or formal plan for doing so. Instead, she simply objected to the Sale/Disposition Motion, making vague

references to having located a new site.  In her Objection and Cross Motion she still does not present a concrete proposal.

The Court exercised its discretion to give more time so that Hlatky and Hahnfeldt could formalize an arrangement with TII and the Trustee, but the parties reported that they could not reach an agreement.  The bankruptcy estate has been prejudiced by inaction.  The Trustee has incurred costs and substantial professional fees in responding to the barrage of objections and motions filed by Hahnfeldt and Hlatky who appear not to recognize that a bankruptcy trustee cannot magically produce funds for a defunct entity regardless of the valuable and ground breaking research that it once performed through their auspices.  The positions espoused by Hahnfeldt and Hlatky throughout this case have been all talk, but no action.  Despite their contentions that the Equipment and Biological Materials may only be transferred in accordance with nonbankruptcy law, the parties charged with overseeing those laws, the Commonwealth of Massachusetts through the Attorney General and the United States, through the DOE, have not asserted that position or, to the extent the DOE did so, it consented to the Trustee's proposed disposition of the Equipment and Biological Materials if a "transfer cannot be agreed upon on or before May 27, 2016."

B. Hlatky's Motion for Stay

1. Applicable Law

Although Hlatky does not specifically cite Fed. R. Bankr. P. 8007, governing motions for stay pending appeal, her request for a stay, made in two sentences in her Objection and Cross Motion, is essentially a motion under Rule 8007.   That rule provides that a party must move first in the bankruptcy court for a stay pending appeal.  Fed. R. Bankr. P. 8007(a).

The legal standard governing the issuance of a stay pending appeal is well known.  As the United States Court of Appeals for the First Circuit in Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13 (1st Cir. 2002), recognized, a party moving for stay pending appeal must satisfy the traditional, four-part standard applicable to preliminary injunctions in determining whether to grant a stay pending appeal, namely, "(1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies."  Id. at 16, n.3.  "'The sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits.'"  Id. (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).  In Acevedo-Garcia, the First Circuit added:  "In essence, the issuance of a stay depends on 'whether the harm caused [movant] without the [stay], in light of the [movant's] likelihood of eventual success on the merits, outweighs the harm the [stay] will cause [the non-

moving party].'" Id. at 16-17 (citing <u>United Steelworkers of Am. v. Textron, Inc.</u>, 836 F.2d 6, 7 (1st Cir. 1987)). *See also* <u>In re Morgan</u>, No. 10–40497–JNF, 2011 WL 1168297 at *6 (Bank. D. Mass. Mar. 29, 2011) (citing <u>In re MEDSCI Diagonistics, Inc.</u>, 2011 WL 280866 (Bankr. D. P.R. Jan. 25, 2011), and <u>Pye ex rel. N.L.R.B. v. Excel Case Ready</u>, 238 F.3d 69 (1st Cir. 2001)).  A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant.  <u>Henkel v. Lickman (In re Lickman)</u>, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003).  According to the court in <u>In re Miraj and Sons, Inc.</u>, 201 B.R. 23 (Bankr. D. Mass. 1996),

> There is a difference of opinion as to whether each of the four factors must be satisfied or whether they may be balanced. *See* <u>Public Serv.</u>, 116 B.R. at 348 (cases cited). In this Court's view, a stay pending appeal should not be granted if any of the factors is entirely absent. For example, if the appeal is patently frivolous, or if damage to the moving party would not be irreparable if the stay were not granted, or if the relative greater damage would be visited upon the adverse party if the stay were granted, it would be inappropriate to grant the stay, even if other elements of the standard could be met. However, once established, "not all of the four conditions need be given equal weight." <u>Great Barrington</u>, 53 B.R. at 239. "These factors are not to be applied in a vacuum but instead must be viewed in light of the importance of the right of appeal and preservation of the status quo during the appeal." <u>In re Howley</u>, 38 B.R. 314, 315 (Bankr. D. Minn. 1984).

<u>In re Miraj and Sons, Inc.</u>, 201 B.R. at 26.

2. Analysis

In the present case, having reviewed the entire record of proceedings concerning the Sale/Disposition Motion, this Court concludes that Hlatky has not satisfied the requirements for a stay pending appeal.  She has not shown a

likelihood of success on the merits of her appeal. Hlatky did not establish that she had an interest in either the Equipment or the Biological Materials or standing to assert the rights of either the DOE or the Attorney General. Indeed, by waiving, albeit somewhat conditionally, a distribution with respect to her proof of claim., her standing to seek a stay is questionable. The Trustee demonstrated that the DOE's interest was in bona fide dispute. The Court determined that the Trustee exercised sound business judgment and that the sale was in the best interests of the creditors of the bankruptcy estate, observing that Hlatky was pursuing her own interests in objecting to the Sale/Disposition Motion. Notably, no creditors other than Hahnfeldt, Hlatky or Lamont have challenged the Trustee's business judgment. Hlatky continues to attempt to obtain the Equipment and Biological Materials which the Trustee proposes to sell or destroy without any consideration. Indeed, as noted above, the Trustee offered to return her research to her, but she did not avail herself of that opportunity.

Hlatky has not shown irreparable harm as she has been offered the opportunity to remove her research materials and Biological Materials resulting from her individual research, but she has not availed herself of this opportunity set forth in the Order. On balance, the relative harms from a stay and equities weigh in the estate's favor. A fundamental purpose of the Bankruptcy Code is to make distributions to creditors. If the Sale/Disposition Order is not implemented, the estate's Settlement Agreement with the Steward Entities is in jeopardy, including release of claims in excess of $16 million, and the estate will continue to

incur the expense of maintaining the Equipment and Biological Materials, as well as potentially more use and occupancy charges.  For these reasons, Hlatky's request for a stay of the Sale/Disposition Order is denied.

        C.  Hahnfeldt's Reconsideration Motion of the Order Approving Settlement Agreement

        1.  Law Applicable to the Approval of Compromises

The standard for approval of a compromise under Fed. R. Bankr. P. 9019 is well settled in the First Circuit, and the Court applied that standard in evaluating whether to approve a compromise.  In In re High Voltage Eng'g Corp., 397 B.R. 579 (Bankr. D. Mass. 2008), aff'd, 403 B.R. 163 (D. Mass. 2009), this Court set forth the standard for approval of settlements under Fed. R. Bankr. P. 9019, quoting In re Healthco Int'l, Inc., 136 F.3d 45 (1st Cir. 1998), and referencing Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). This Court stated:

> The bankruptcy court essentially is expected to "'assess [ ] and balance the value of the claim[s] ... being compromised against the value ... of the compromise proposal.'" Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (citation omitted). It may consider, among other factors: (1) the probability of success were the claim to be litigated-given the legal and evidentiary obstacles and the expense, inconvenience and delay entailed in its litigation-measured against the more definitive, concrete and immediate benefits attending the proposed settlement, see Kowal v. [Malkemus (In re Thompson) ], 965 F.2d [1136] at 1141 n.5, 1145 [ (1st Cir. 1992) ] (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the fiduciary proposing the settlement.  See Jeffrey, 70 F.3d at 185; In re Texaco, Inc., 84 B.R. 893, 902 (Bankr.

S.D.N.Y. 1988) (citing <u>Protective Committee for Indep.
Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>,
390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

<u>Id</u>. at 50. *See also* <u>In re Fibercore, Inc.</u>, 391 B.R. 647 (Bankr. D. Mass.
2008). "When considering . . . [a settlement] . . ., deference should
also be given to the Trustee's judgment regarding the settlement, <u>Hill
v. Burdick (In re Moorhead Corp.</u>), 208 B.R. 87 (1st Cir. BAP 1997),
provided that the trustee can demonstrate that the proposed
compromise falls within a 'range of reasonableness.'" <u>Fibercore, Inc.</u>,
391 B.R. at 655 (citing <u>In re Whispering Pines Estates, Inc.</u>, 370 B.R.
452, 461 (1st Cir .BAP 2007), and <u>In re 110 Beaver St. P'ship</u>, 244 B.R.
185, 187 (Bankr. D. Mass.2000)).

<u>In re High Voltage Eng'g Corp.</u>, 397 B.R. at 601.  This Court in <u>High Voltage</u> also

recognized that the First Circuit stated in <u>Healthco</u>, 136 F.3d at 50, that the factors

set forth by the court in <u>Jeffrey v. Desmond</u> are not exclusive and that public policy

should be considered in evaluating compromises as well.  *See* <u>High </u>Voltage, 397

B.R. at 601-02*; see also* <u>In re Wolverine Proctor & Schwartz, LLC</u>, No. 06-10815-JNF,

2009 WL 1271953, at *4 (Bankr. D. Mass. May 5, 2009), *aff'd sub nom*. <u>In re

Wolverine, Proctor & Schwartz, LLC</u>, 436 B.R. 253 (D. Mass. 2010); <u>In re Telcar

Grp., Inc.</u>, 363 B.R. 345 (Bankr. E.D.N.Y. 2007).

2. Analysis

Hahnfeldt, in his Reconsideration Motion, repeats his often stated views

made since the inception of this case that boil down to his belief with reference to

the *cy pres* doctrine,[19] that the Debtor should be rehabilitated and that the Court's

---

[19] "The phrase "*cy pres*" is the equivalent to modern French *si près*, meaning so near
or as near. The intention of the testator is to be carried out as nearly as may be. IV
A.W. Scott, The Law of Trusts, sec. 399 at 2924–2925 (3d ed. 1967)." *See* <u>In re Bishop
Coll.</u>, 151 B.R. 394, 397 (Bankr. N.D. Tex. 1993).  In that case, the court held the

orders should further the Debtor's research mission.    The Court considered his

Objection at the hearing on the Rule 9019 Motion and overruled it, as well as

Hlatky's objection because the compromise resolved the substantial claims and

disputes between the Trustee and Steward with substantial benefits to the estate,

in the form of a cash payment to the Trustee of $750,000, and withdrawal of

Steward's administrative and unsecured claims of over $16 million.  Based on the

Court's evaluation of the factors set forth in <u>Jeffrey v. Desmond</u>, the Court

approved the Settlement Agreement.  Hahnfeldt has not established grounds for

reconsideration of the Order Approving Settlement Agreement.  The only new

argument that he asserts is that certain of the materials are located in a space other

than that leased by the Debtor.  That argument was irrelevant to the omnibus

settlement, which resolved all disputes between Steward and the Trustee.

     D. <u>The Application to Employ Licensed Site Professional</u>

     Lamont voices the objections of Hlatky and Hahnfeldt to the

Sale/Disposition Order and the Order Approving Settlement Agreement.  As she

did not object to either order, and because the Trustee's application to employ

Vertex is incident to approval of the Settlement Agreement and the sale and

---

doctrine of cy pres was applicable and precluded the Chapter 7 trustee from
asserting interest in trust income, and even if the trusts in question had failed, the
property would revert to settlors' estates and would not be property of debtor's
estate.  Notably, in that case, the Attorney General for the State of Texas intervened
as a defendant.

disposition of the Equipment and Biological Materials, the Court overrules her Objection.

## V.    CONCLUSION

In view of the foregoing, the Court shall enter an order (1) denying Hahnfeldt's Reconsideration Motion; (2) granting the Application to Employ Licensed Site Professional; (3) overruling the Objection to Application to Employ Licensed Site Professional and denying the Cross Motion for Reconsideration or Stay filed by Hlatky; and (4) overruling Lamont's Objection to the Application to Employ Licensed Site Professional

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June  24, 2016