UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**GENESYS RESEARCH INSTITUTE, INC.,**           Chapter 11
    Debtor                                  Case No. 15-12794-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the objection to the Claim of Dr. Christine E. Briggs ("Dr. Briggs" or the "Claimant") filed by the Chapter 11 Trustee of the estate of Genesys Research Institute, Inc. (the "Debtor," or "GRI"). Dr. Briggs, a former employee of GRI, who was terminated in September of 2014, approximately one year before the commencement of the Debtor's bankruptcy case, timely filed a proof of claim on October 29, 2015 seeking sick time pay in the amount of $4,262.00 and severance pay in the amount of $2,687.00, for a total claim in the amount of $6,949.00. For reasons set forth below, only Dr. Brigg's entitlement to severance benefits is at issue.

On November 22, 2016, the Trustee filed "Chapter 11 Trustee's First Omnibus Objection to Claims (Employment – Non-Union)" with respect to certain employees' claims in which he distinguished between employees who had been terminated by GRI in September of 2014 and those who were terminated in July of 2015. The Chapter 11

1

Trustee objected to the totality of Ms. Briggs's claim. In his Objection, the Trustee stated in pertinent part the following:

Steward's [GRI's predecessor] severance policy provided for severance payments to eligible employees based upon job category and years of completed service. That policy stated: "In exchange for signing a release of claim, all eligible employees will be provided severance benefits based on the following schedule. . . . No employee will be eligible for severance pay under this policy without signing a release. Employees with less than one year of service automatically get one year of service credit for severance purposes only." . . . The policy stated that the employer had the discretion to determine whether or not the benefits would be provided to any particular employee, and the employer reserved the right to modify and/or eliminate the policy at any time without prior notice.

***

With respect to severance, the Debtor offered each of the July Claimants a severance package of one week's pay for each year of completed service (up to a maximum of 26 weeks' pay), subject to the execution and return of a release of claims (the "Severance and Release Agreement") within 45 days of termination, but, upon information and belief, none of the July Claimants executed and returned the Severance and Release Agreement to the Debtor within the applicable 45-day period. Accordingly, the Trustee objects to any claim for severance benefits.

Philip J. Hahnfeldt filed a "General Objection to the Chapter 11 Trustee's First Omnibus Objection to Claims (Employment – Non-Union)." Dr. Briggs filed a "Joinder to Hahnfeldt's Objection." On January 4, 2017, this Court deemed the Trustee's Objection to Dr. Briggs's claim to be a contested matter to which Part VII of the Federal Rules of Bankruptcy Procedure applied and subsequently issued a scheduling order.

On September 8, 2017, the Trustee and Dr. Briggs filed a Joint Pre-Trial Statement in which the parties set forth admitted facts requiring no proof. The Court conducted a trial on November 13, 2017 at which Dr. Briggs, appearing pro se, testified and three exhibits were admitted into evidence. At the conclusion of the evidentiary hearing,

2

counsel to the Trustee, without objection from Dr. Briggs, conceded that "[u]nder Massachusetts law . . . severance must be a matter of contract . . . not a matter of statute."

## II. FACTS

### A. Admitted Facts[1]

Between November 2010 and December 31, 2012, the Debtor operated as Steward Research Specialty Projects Corporation ("SRSPC"), an entity related to Steward Health Care ("SHC") and Steward St. Elizabeth's Medical Center LLC ("SSEMC") (collectively "Steward"). At all relevant times, the Debtor operated out of a facility located at St. Elizabeth's Medical Center in Brighton, Massachusetts, at premises owned by SSEMC. As of about December 31, 2012, the Debtor began operating as GRI.

The Claimant is a former "at-will" employee of the Debtor; she had no employment contract with the Debtor at any time. On September 15, 2014, David Horowitz ("Horowitz"), the President and CEO of GRI, sent a letter (hereafter, the "September Letter") to the Claimant and certain other GRI staff and faculty (the "September Claimants") in which he stated, among other things, the following:

Vacation and sick payout- The dollar amount representing your accrued by [sic] unused vacation leave will be included as part of the paycheck issued September 30th. Although GRI has not issued a policy guaranteeing the payout of any sick leave, we are also including that dollar amount in your final paycheck.

The September Letter did not mention severance pay.

---

[1] The Court paraphrases the parties' statement of admitted facts in the Joint Pre-Trial Memorandum. In addition, Dr. Briggs corrected certain errors set forth in the admitted facts without objection by the Trustee.

3

Prior to the termination of the Claimant's employment at GRI, the Claimant was compensated on an hourly basis for hours worked at a rate equal to $31.25 per hour. On or about September 30, 2014, the Debtor terminated the Claimant's employment, along with the employment of other so-called September Claimants.

On September 30, 2014, GRI did not have a policy regarding severance benefits.

On September 30, 2014, the Claimant received a payment from GRI which included the following:

a. A "Sick Payout" in the amount of $512.50 for 16.40 hours of the Claimant's unused 136.39 hours of unused sick time at an hourly rate of $31.25.

b. A "Vacation Term Payout" in the amount of $962.81 for 30.81 hours of vacation time at an hourly rate of $31.25.

After regular withholdings on account of taxes and other federal and state regulations, the Claimant received a total payment of $1,093.32 on account of the above payouts.

Neither the Claimant, nor any other September Claimant, was offered any severance benefit by GRI. Neither the Claimant, nor any other employee of GRI terminated by GRI on September 30, 2014, was offered an opportunity to execute a release of claims against GRI upon their termination. Neither the Claimant, nor any other employee of GRI terminated by GRI on September 30, 2014, was afforded the opportunity to execute a release of claims against GRI upon termination as a precondition to obtaining any severance.

In July 2015, GRI terminated the employment of certain of its other employees, and did offer severance benefits to those employees in exchange for execution and delivery of a release of claims against GRI. No reason was offered to the Claimant by any GRI

4

official as to why no individual whose employment was terminated in September of 2014 was offered severance or the opportunity to execute a release of claims to obtain it, or why only certain claimants whose employment was terminated in July of 2015 were offered severance or the opportunity to execute a release of claims to obtain it.

The Claimant was among the September Claimants who reported certain activity of GRI and its Member [sic], Horowitz, to the Massachusetts Attorney General, due to concern that the reported activity was not in accordance with law.[2]  The Claimant requested and obtained written permission from the Office of the Attorney General Fair Labor Division to pursue, through Small Claims Court, a claim for the amount of sick originally set forth in her proof of claim.  The action against Horowitz was settled.

Dr. Briggs seeks $2,687.00 in severance benefits in connection with the termination of her employment at GRI. She has withdrawn that portion of her Claim seeking $4,262.00 in sick pay benefits due to having settled that part of her Claim in the Small Claims Court matter.

B. Facts Adduced at Trial

Dr. Briggs was the only witness.  The Trustee did not call any witness to testify and did not introduce any documentary evidence.  Trustee's counsel did not call the

---

[2] The Court takes judicial notice that Jonathan C. Green, on behalf of Maura Healey, Attorney General of the Commonwealth of Massachusetts, and Victor W. Zhao an attorney with the Department of Justice, Commercial Litigation Branch, Civil Division, filed an appearance as counsel to the United States of America through the Department of Energy in this Chapter 11 case. *See also* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

Trustee or any person from GRI's former management to explain its policy or that of its predecessor, Steward.

Dr. Briggs is an accomplished scientist. She earned a Ph.D. in molecular biology and continued her training as a post-doctoral fellow. She testified that she transitioned to human molecular genetics and genomics and computational biology, and, in 2012, was recruited by Dr. Lynn Hlatky to the Center of Cancer Systems Biology (the" CCSB"), located on the campus of St. Elizabeth's Hospital in Brighton, Massachusetts, where she was an assistant investigator and a member of the research faculty investigating genomic factors in cancer. The CCSB faculty, comprised of between 15 and 20 physicists, mathematicians, biologists, and molecular biologists, conducted research funded by the Federal Government through the Department of Energy, the National Aeronautics and Space Administration, and the National Cancer Institute focused on genetic factors for cancer and cancer risk from exposure to radiation.

Dr. Briggs testified that she was an "at-will" employee of the Debtor. On September 15, 2014, she was informed by Horowitz, the President and CEO of GRI, that she was being "laid off" from her position effective September 30, 2014. Indeed, she stated that all the investigators, including Dr. Hlatky and Dr. Hahnfeldt were terminated, with the exception of a few technicians and "a couple of other investigators." In his September 15, 2014 letter, Horowitz informed Dr. Briggs about, among other things, unemployment assistance, continuation of health and dental benefits (through COBRA) and final paychecks. He did not mention severance in the letter and there were no references to severance in attachments to the letter, which included a letter from an

6

employee in Human Resources, and information about benefits such as flexible spending accounts and voluntary life insurance.

Although Dr. Briggs testified that she filed complaints against GRI, discussed below, she admitted that at no time did she make a report to any regulatory authority that GRI made a false statement or submitted false records to the federal government. She testified that her claim for severance was predicated on the disparity in the offer of severance benefits between employees terminated in September of 2014 and those terminated in July of 2015. She also testified that her awareness of the policy was based on communications with Dr. Yun Wang. Dr. Briggs stated:

> The issue is not whether or not people were given severance, but whether or not they were designated as eligible for severance. People were offered severance or they were not offered severance and it appears that whether or not people were offered severance depended on which month they were terminated in.
>
> But even that was arbitrarily applied because, as I pointed out, Dr. Yun Wang stated that she was not offered severance with all the other July 2015 employees who were let go at that time. She was the only whistleblower at that time. The only criteria that seems to have been applied for determining eligibility for being offered severance was whether or not one was a whistleblower.
>
> And I think this is illustrated in language that the Trustee used in the omnibus objection where in his item number 13 on page 6 he states that the employer had the discretion to terminate whether or not the severance benefits would be provided to any particular employee and I believe that would not be in compliance with Mass [sic] wage law.
>
> And in item 19 he refers to the September claimant saying, ["]nor was it["], referring to an offer of severance, required to offer -- or ["]nor was it["], meaning the debtor GRI, required to offer severance benefits to September claimants [sic].
>
> And then in item number 27 of his omnibus objection he goes on to refer to the July claimants saying none of the July claimants returned a signed

7

> severance and release agreement, which suggests that, in fact, those employees let go at that time were offered severance agreements. And by the way, Dr. Yun Wang in her affidavit goes on to say in her July 28th letter that even though those employees signed the waivers and were promised that they would receive their severance pay, they did not so they were misled.

Dr. Briggs added that "the only criteria that seems to have been applied by GRI leadership was whether or not an employee had filed a complaint with an authority about their misappropriation of restricted funds."

Dr. Briggs also testified about her understanding of the term "whistleblower," indicating that it applied to employees who filed written complaints with the Attorney General's Office or with the Inspector General, adding "I filed complaints with the Inspector General's Office at the Department of Energy and NASA and NIH. And it was at that point that DOE stepped in to get involved in the case as the representative of all the federal agents."

Dr. Briggs personally drafted a complaint, using a Charitable Organization Complaint Form, with the Non-Profit Organizations/Public Charities Division of the Office of the the Attorney General for the Commonwealth. She testified that it was her belief that GRI's management was aware of the complaint, but she indicated that she could not be positive.

Dr. Briggs also testified that, when she was terminated, she and other employees were assured that management was going to continue Steward's policies. She further stated that she was aware that the employees that were terminated after she was terminated were required to sign a release in exchange for receiving severance, although,

8

because she was not offered severance, she had no idea what the release would have entailed.

Dr. Briggs testified that she may have received documents or manuals from Steward regarding benefits, including severance, but she could not recall any details regarding severance. She reiterated that the only difference between the September 2014 and July 2015 employees was severance, stating "[t]hat's the only criteria that was consistently applied for September claimants and July claimants." In other words, the earlier terminated employees who took part in whistleblower actions were denied the opportunity to receive severance, while the employees who were terminated later, whom Dr. Briggs stated were predominantly Chinese nationals, were not.

Dr. Briggs introduced a letter from Robert Stemple, GRI's Director of Finance, to Ms. Yun Wang who was terminated effective July 24, 2015 and who was not offered severance and a letter to another employee whose name was redacted. That letter to the unidentified employee was dated June 20, 2015 and included a statement that "[i]n exchange for signing a release of claims you will be eligible to receive severance benefits as follows:  1 week of severance benefits per 1 year of completed service, up to a maximum of 26 weeks." According to Dr. Briggs, Ms. Wang had engaged in so-called whistleblower activity and was not offered severance.

### III. APPLICABLE LAW

This court set forth the law applicable to proofs of claim objections in In re Hayes, 393 B.R. 259 (Bankr. D. Mass. 2008). In that case, this Court stated:

9

> Pursuant to Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim." *See* In re Long, 353 B.R. 1, 13 (Bankr. D. Mass. 2006). *See also* Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993). In order to rebut the prima facie evidence, the objecting party must produce "substantial evidence," and, if the objecting party produces substantial evidence in opposition to the proof of claim, rebutting the prima facie evidence, the burden shifts to the claimant to establish the validity of its claim. Long, 353 B.R. at 13 (citations omitted).

In re Hayes, 393 B.R. at 269. *See also* In re Gretag Imaging, Inc., 485 B.R. 39, 44 (Bankr. D. Mass. 2013).

**IV. POSITIONS OF THE PARTIES**

The Trustee maintains that GRI did not have any severance policy in place at the time Dr. Briggs was terminated, and it was not legally obligated to make an offer of severance to her. Alternatively, he asserts that an offer of severance was discretionary and conditioned upon the execution of a release.

Dr. Briggs indicated that her claim is based, at least in part, on the Federal False Claim Act, 31 U.S.C. § 3730(h), which she maintains provides for relief from retaliatory actions and, in her particular case, retaliation was for her lawful acts in furtherance of whistleblower allegations set forth in a complaint filed with the Office of the Massachusetts Attorney General Charitable Organization on January 13, 2014 and a complaint filed in the Massachusetts Superior Court, Department of the Trial Court on July 28, 2014.

**V. ANALYSIS**

Dr. Briggs relies, at least in part, on 31 U.S.C. § 3730(h), which provides in pertinent part:

Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. 3730(h)(1). The statute also provides that

> A person [a private person] may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

Id at 3730(b). Section 3729 sets forth the acts that may give rise to liability under the statute:

(a) Liability for certain acts.--

  (1) In general.--Subject to paragraph (2), any person who--

    (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

    (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

    (E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

>   (F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or
>
>   (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
>   is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

Id. at § 3729.

The Court concludes that Dr. Briggs failed to establish that GRI committed any of the acts set forth in § 3729. Nevertheless, she produced evidence that GRI applied Steward's severance policy in a fashion that demonstrated that it was retaliating against employees who participated in the filing of complaints against it.

Dr. Briggs's claim has prima facie validity in the amount of $2,687.00. The Trustee, through cross-examination of Dr. Briggs, established that Dr. Briggs did not have in her possession any employee manuals or documents that would have demonstrated her entitlement to severance. Nevertheless, Dr. Briggs established with reference to the Trustee's First Omnibus Objection to Claims (Employment – Non-Union), that "Steward's severance policy provided for severance payments to eligible employees

based upon job category and years of completed service." That policy, according to the Trustee, stated:

> "'In exchange for signing a release of claim, all eligible employees will be provided severance benefits based on the following schedule. No employee will be eligible for severance pay under this policy without signing a release'" and that "[t]he policy stated that the employer had the discretion to determine whether or not the benefits would be provided to any particular employee, and the employer reserved the right to modify and/or eliminate the policy at any time without prior notice."

Because GRI offered the July 2015 employees, who had not filed complaints against it, severance, the Court concludes: 1) that GRI retained Steward's severance policies, and 2) that it had neither modified nor eliminated the policy.  Although the policy provided that the employer had the discretion to determine which employees would be offered severance, the Court concludes that Dr. Briggs submitted unrebutted testimony that GRI did not act consistently or in good faith in offering some, but not all employees, severance, and singled out those employees who had expressed concerns and reservations about its business practices by filing complaints with the Attorney General of the Commonwealth and , refusing to afford them the opportunity to obtain severance benefits by signing a release.

The well-recognized rule is that "'[e]mployment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.'" <u>Wright v. Shriners Hosp. for Crippled Children</u>, 412 Mass. 469, 472, 589 N.E.2d 1241, 1244 (1992) (quoting <u>Jackson v. Action for Boston Community Dev., Inc.</u>, 403 Mass. 8, 9, 525 N.E.2d 411 (1988)).  Nevertheless, courts also recognize exceptions to the general rule. According to the court in <u>Wright</u>,

13

We have recognized exceptions to that general rule, however, when employment is terminated contrary to a well-defined public policy. Thus, "[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., *supra*, 404 Mass. at 149-150, 533 N.E.2d 1368.   We have also held that redress was available to an at-will employee who was discharged in retaliation for his cooperation with a law enforcement investigation concerning his employer. Flesner v. Technical Communications Corp., 410 Mass. 805, 811, 575 N.E.2d 1107 (1991). Although the employee in Flesner was not required by law to cooperate, we reasoned that the Legislature had clearly expressed a policy encouraging cooperation with criminal investigations as indicated by statutes providing for reimbursement of expenses for persons assisting in investigations and immunity for witnesses testifying in grand jury investigations. Id. at 810, 575 N.E.2d 1107.

Wright v. Shriners Hosp. for Crippled Children, 412 Mass. at 472–73, 589 N.E.2d at 1244.

In Wright, The Supreme Judicial Court held that "a termination of Wright's employment at will in reprisal for her critical remarks to the survey team would not have violated public policy." 412 Mass. at 472, 589 N.E.2d at 1243-44.  The Court concludes that Wright is distinguishable as Dr. Briggs was instrumental in filing a complaint with the Attorney General.  The complaint made by Dr. Briggs and her colleagues went beyond internal critical remarks and was not frivolous.  Indeed, the Court takes judicial notice that her complaint prompted an investigation by the Attorney General.[3]  Accordingly, the Court concludes that the public policy exception was implicated and that the Trustee failed to rebut Dr. Briggs's evidence that upon her termination she was denied severance in retaliation for her whistleblower activities.

---

[3] *See* "Motion by Interested Party Maura Healey, Attorney General of the Commonwealth of Massachusetts, for Entry of Order Authorizing and Directing Examination of Debtor and Fiduciaries of Debtor Genesys Research Institute, Inc. Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

14

In summary, the Trustee, through his Omnibus Objection to Dr. Briggs's proof of claim provided arguments in an attempt to rebut the prima facie validity of Dr. Brigg's proof of claim, emphasizing Dr. Briggs's status as an at-will employee and the discretionary nature of the severance policy. He did not, however, submit competent evidence to sufficiently rebut the prima facie validity of her proof of claim for severance in the amount of $2,687.00. Dr. Briggs demonstrated that she has a valid claim for severance as she unequivocally established that the severance policy was not applied uniformly and, indeed, GRI did not act in good faith in failing to afford the so-called whistleblower claimants such as herself the opportunity to sign a release in exchange for severance benefits. *See* In re Hayes, 393 B.R. at 269.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order overruling the Chapter 11 Trustee's Objection to the claim of Dr. Christine Briggs.

By the Court,

*[signature]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 8, 2017